474 P.2d 38

**ROCKY MOUNTAIN FIRE & CASUALTY COMPANY, a Washington corporation, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Paul E. Quinlan and Dortha Quinlan, his wife, and Michael D. Foster, Administrator for the Estate of James J. McGowan, Deceased, Appellees.**

**No. 1 CA–CIV 1178.**

Court of Appeals of Arizona,
Division 1,
Department B.
Sept. 10, 1970.

Rehearing Denied Dec. 2, 1970.
Review Granted Jan. 19, 1971.

Burch, Cracchiolo, Levie & Guyer, by Dan Cracchiolo, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Craig R. Kepner, Phoenix, for Allstate Ins. Co.

Hunter, Bartlett, Penn & Lerch, by Wm. Penn, Phoenix, for Quinlan.

S. R. Hutchison, Phoenix, for Quinlan and Foster.

JACOBSON, Judge.

We are called upon in this appeal from a declaratory judgment entered by the Superior Court of Maricopa County, to determine as between two different insurance companies, the effect of an "escape clause" in one policy and an "excess insurance clause" in another policy where both policies may provide coverage to one insured.

Plaintiff-appellant, ROCKY MOUNTAIN FIRE & CASUALTY COMPANY, hereinafter referred to as "Rocky Mountain", brought a declaratory judgment action against defendant-appellee, ALLSTATE INSURANCE COMPANY, hereinafter referred to as "Allstate", and others seeking a determination of the duties and liabilities of the two insurers arising out of an automobile accident.

There is no factual dispute present in this case. On March 1, 1968, RAYMOND E. HODGSON, dba RAY's AUTO BODY SHOP, was insured by Rocky Mountain under a garage liability insurance policy. This policy afforded coverage under certain circumstances to garage customers using "loaner" automobiles owned by Hodgson. The Rocky Mountain garage liability policy contained the following clause:

"In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions:

"1. If there is other valid and collectible insurance, *whether primary, excess or contingent*, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy." (emphasis added.)

This type of provision is known in the insurance business as a "non-liability" or an "escape" clause.

On March 1, 1968, James J. McGowan left his automobile at Ray's Auto Body Shop for repairs and was loaned an automobile for his use while the necessary repairs were being performed on his automobile. This "loaner" automobile was a vehicle named in the Rocky Mountain policy. McGowan, while driving the loaner automobile was involved in an accident involving another automobile being driven by appellee, PAUL E. QUINLAN, which resulted in the death of Mr. McGowan. At the time of the accident Mr. McGowan was insured by Allstate, whose policy provided coverage to McGowan while using a substitute automobile. The Allstate policy contained the following provision:

> "[The insurance] with respect to a temporary substitute automobile or a non-owned automobile shall be *excess* over any other collectible insurance." (emphasis added)

This type of provision is known in the insurance business as an "excess clause."

A suit for damages was subsequently brought against the estate of McGowan by appellee Quinlan. The two insurance companies were unable to agree as to which policy afforded primary coverage and which company had the duty to provide a defense to the Quinlan action. Accordingly, the declaratory judgment action was instituted.

On cross-motions for summary judgment, the trial court held that Rocky Mountain was primarily liable up to the limits of its particular policy and owed the duty of defense to the then pending personal injury action. It further held that Allstate was liable only for any judgment in excess of the limits of the Rocky Mountain policy. Rocky Mountain has appealed from this judgment.

The various positions of the parties are set forth as follows:

*Rocky Mountain:*

Rocky Mountain first tacitly agrees that an "escape" clause which is couched in general language will not prevail over an "excess" clause and would render the insurer having the escape clause primarily liable in a confrontation between two such insurance policy clauses. *See* Annot. 46 A.L.R.2d 1163.

However, Rocky Mountain contends that since its escape clause is couched in specific language excluding coverage in the event excess insurance is available to a garage customer and since this exclusion is tied specifically to the existence or non-existence of other insurance in amounts necessary to satisfy the Financial Responsibility Act of the State of Arizona, there is "other collectible insurance" (under the terms of the Allstate policy) and therefore Rocky Mountain is not liable. In support of this position, Rocky Mountain cites the cases of Indiana Lumbermen's Mutual Insurance Company v. Mitchell, 409 F.2d 392 (7th Cir. 1969) (applying Illinois Law); United States Fidelity & Guaranty Company v. Dixie Auto Insurance Company, 292 F.Supp. 554 (N.D. Ala. 1968) aff'd 403 F.2d 717 (5th Cir. 1968); Faltersack v. Vanden Boogaard, 39 Wis.2d 64, 158 N.W.2d 322 (1968); Government Employees Insurance Co. v. Globe Indemnity Co., 415 S.W. 2d 581 (Ky.1967); Allstate Ins. Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.E. 2d 436 (1967); Continental Cas. Co. v. Weekes, 74 So.2d 367 (Fla.1954); *See 7 Am.Jur.2d Automobile Insurance § 202.*

*Allstate:*

Allstate counters with the argument that the Rocky Mountain escape clause is a limitation of the omnibus insured section of the Financial Responsibility Act of Arizona and is therefore void, *citing* Mills v. Liberty Mutual Ins. Co., 60 Misc.2d 1085, 304 N.Y.S.2d 801 (1969); American Motorists Ins. Co. v. Kaplan, 209 Va. 53, 161 S.E. 2d 675 (1968).

Moreover, Allstate argues that contrary to the case law cited by Rocky Mountain even a specific escape clause will not prevail over an excess clause and, therefore, Rocky Mountain is primarily liable. In support of this position, Allstate relies on Fed. Ins. Co. v. Prestemon, 278 Minn. 218, 153

N.W.2d 429 (1967); Bituminous Cas. Corp. v. Andersen, 184 Neb. 670, 171 N.W.2d 175 (1969).

*Quinlan:*

Appellee Quinlan presents a third alternative for the court's consideration, arguing that under a fact situation as present here, both the escape clause of the Rocky Mountain policy and the excess clause of the Allstate policy are legally ineffectual and therefore the liabilities under the policies should be prorated between the two insurers. In support of this contention he cites Lincombe v. State Farm Mutual Automobile Insurance Co., 166 So.2d 920 (La. App.1964); Hardware Deal. Mut. F. Ins. Co. v. Farmers Ins. Exchange, 444 S.W.2d 583 (Tex.1969); United Services Auto Assoc. v. Hartford Acc. and Ind. Co., 220 Tenn. 120, 414 S.W.2d 836 (1967); Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 F.2d 958 (9th Cir. 1952). A fourth alternative can conceivably be added to the alternative dispositions of this case suggested by the parties, that is, since both policies on their face would limit coverage if "other insurance" is available, neither policy provides coverage and neither insurance company is liable. The fact that neither insurer suggests this option must be taken as an acknowledgment that McGowan at the time of the accident had insurance coverage, the only question being who must provide that coverage and the corollary duty of defense of the action against McGowan's estate.

We turn first to Allstate's contention that the escape clause of the Rocky Mountain policy is void under the Financial Responsibility Act.

The entire "other insurance" clause of the Rocky Mountain policy provides as follows:

"In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions:

"1.  If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.

"2.  If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.

"3.  If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit."

It is apparent that this "other insurance" clause is in fact three separate clauses: (1) Where other insurance is available up to limits set by the Financial Responsibility Act (now $10,000.00 for an individual claim in Arizona) it is an "escape" clause. (2) Where the other insurance does not provide sufficient coverage to comply with the Financial Responsibility Act, it is an "excess" clause. (3) Where no other insurance is available it provides coverage up to the limits of the Financial Responsibility Act.

Section 28–1170 of the Financial Responsibility Act, 9 A.R.S. (1956), provides as follows:

"B.  The owner's policy of liability insurance must comply with the following requirements:

\*     \*     \*     \*     \*     \*

"2.  It shall insure the person named therein *and any other person, as in-*

*sured,* using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages. * * *" (emphasis added)

This portion of the Financial Responsibility Act has been held to be a part of every motor vehicle liability policy. Jenkins v. Mayflower Ins. Exchange, 93 Ariz. 287, 380 P.2d 145 (1963). Moreover, attempts to exclude certain classes such as members of the Armed Services. [Jenkins v. Mayflower Ins. Exchange, *supra*], a group having a particular relationship to the name insured [*e. g.,* employees, Universal Under. Ins. Co. v. Dairyland Mut. Ins. Co., 102 Ariz. 518, 433 P.2d 966 (1967)], or particular named individuals [Dairyland Mut. Ins. Co. v. Anderson, 102 Ariz. 515, 433 P.2d 963 (1967); Harleysville Mut. Ins. Co. v. Clayton, 103 Ariz. 296, 440 P.2d 916 (1968)], have been struck down by the Arizona Supreme Court on the basis that such exclusions are against the public policy declarations of the Arizona Financial Responsibility Act. This public policy has been stated as follows:

"The Financial Responsibility Act has for its principal purpose the protection of the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons." Schecter v. Killingsworth, 93 Ariz. 273, 280, 380 P.2d 136, 140 (1963).

█ Allstate argues that *Jenkins* and its progeny state the principle that *any* limitation on the omnibus clause provision is void as being against the declared public policy of this state as expressed in the financial responsibility act. We believe Allstate's analysis of these cases is too broad. All of these cases dealt with an exception to the omnibus clause which, if valid, would place the omnibus insured in the position of having no insurance protection whatsoever and therefore he could be categorized as a "financially irresponsible person." Conversely, Rocky Mountain's "other

insurance" clause makes certain that the omnibus insured would have insurance coverage, either by other insurance or its own insurance up to the limits of the Financial Responsibility Act. Thus, it would appear that the public policy considerations of this state would be satisfied.

We have previously indicated that other courts have reached conflicting results in arriving at a solution to this problem. We are, however, helped in arriving at a solution in this state by the application of the principle of construction enumerated in several Arizona Supreme Court decisions.

"The cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control." D.M.A.F.B. Federal Credit Union v. Employers Mut. Liability Ins. Co. of Wis., 96 Ariz. 399, 402, 396 P.2d 20, 22 (1964), *quoted* in Dairyland Mutual Insurance Co. v. Anderson, *supra.*

Applying this cardinal principle to the two insurance policies present here results in the determination that both policies had two common aims:

(1) That if either one of the policies in question had not been in existence at the time of the accident, the other would have provided coverage, and

(2) That the "escape clause" of the Rocky Mountain policy and the "excess" clause of the Allstate policy have one purpose—to relieve the insurer from all or a portion of liability which it would otherwise have if there were no other valid and collectible insurance available.

To this latter end the drafter of the Rocky Mountain policy attempted to overcome the case law against general escape clauses by making its escape clause specific. To do this he added the words "whether primary, excess or contingent" in defining "other valid collectible insurance."

We do not believe that the added adjectives defining other insurance helps in the solution of this problem for two reasons. First, we cannot agree with the rea-

soning of the case law supporting the proposition that an excess clause prevails over an escape clause. This reasoning has been to regard the "escape" policy as "other valid and collectible insurance," thus giving effect and recognition to the "excess" policy, but refusing to recognize the validity of the "excess" policy as "other insurance" thereby giving effect to and requiring application of, the "escape" clause. As was stated in Graves v. Traders & General Ins. Company, 200 So.2d 67 (1st Cir. La.App. 1967) modified, 252 La. 709, 214 So.2d 116 (1968):

> "[W]e have found no decision and have been able to formulate no logically acceptable rule by which under such circumstances one policy may be deemed 'other collectible insurance', thus giving effect to its 'excess' or 'escape' clause while at the same time the protection which it affords is held to not constitute 'other collectible insurance' within the import of a similar provision of the policy with which it is confronted." 200 So.2d at 77.

Secondly, we do not believe the adjectives "whether primary, excess or contingent" add anything to the all-inclusive word "other." Normally, the word "other" without qualification means any other type of insurance whatsoever without limitation as to excess, primary or contingent. Moreover, to now hold that this specific language must prevail over the less specific language of the Allstate policy would only lead Allstate to redraft its "other insurance" clause to out-specific the specific language of the Rocky Mountain policy. We assume this could be done by adding to the "excess" clause the language "excess insurance over any collectible insurance whether primary, excess, escape or contingent."

■ Thus the duel of legal specificity would continue ad infinitum with the result that the insured would have neither policy "available" to him and we devolve ourselves into a battle of semantics. Such a result would obviously be contrary to the Arizona Financial Responsibility Act as interpreted by Jenkins v. Mayflower Insurance Co., supra, and the implied acknowledgment of both insurers in this case that some coverage is available. To overcome this problem, and to give effect to both policies we hold that where the primary purpose of both insurance policies is to provide expanded coverage and secondarily to limit liability and exposure in the event other insurance is available we will give effect to that intent in an equitable manner by requiring both insurers to provide coverage on a pro rata basis. Cases which support this view are Oregon Automobile Ins. Co. v. United States Fidelity and Guaranty Co., supra; Employers Mut. Cas. Co. v. MFA Mut. Ins. Co., 384 F.2d 111 (10th Cir. 1967); Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132 (9th Cir. 1961); Peerless Cas. Co. v. Continental Cas. Co., 144 Cal.App.2d 617, 301 P.2d 602 (1956) limited in Fireman's Fund Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 273 Cal. App.2d 479, 78 Cal.Rptr. 38 (1969); Graves v. Traders and General Ins. Co., 200 So. 2d 67 (La.App.1967), modified 252 La. 709, 214 So.2d 116 (1968); Sparling v. Allstate Insurance Co., 249 Or. 471, 439 P.2d 616 (1968); United Services Auto Assoc. v. Hartford Acc. and Ind. Co., supra; Hardware Deal. Mut. F. Ins. Co. v. Farmers Ins. Exch., supra.

From the standpoint of the insurers themselves we feel the above result is just, for as was expressed in Bituminous Casualty Corporation v. Andersen, supra:

> "Need exists for certainty, simplicity, and inexpensive administration in connection with these business relations among insurers." See Russ "The Double Insurance Problem—A Proposal," 13 Hastings L.J. 183 (1961).

We also find the result is just from the standpoint of the insured:

> "The insured is thus insured by both insurers which is a reasonable result since both insurers wrote expanded coverage policies which they must have intended should reach [the insured], and this problem of double insurance was 'invol-

untarily thrust upon the insured through the operation of another's insurance contract'. 38 Minn.L.Rev. 838, 851 (1954)." Hardware Deal. Mut. F. Ins. Co. v. Farmers Ins. Exchange, *supra,* 444 S.W. 2d at 590.

Having determined that the loss as between the insurers must be prorated, the problem still remains upon what basis this proration should be made.

The prevailing rule in proration cases seems to make the proration according to the policy limits of each insurance policy. *See generally* 69 A.L.R.2d 1122; 76 A.L.R. 2d 502. This result seems to us to be somewhat arbitrary, for as was pointed out in Employers Mut. Cas. Co. v. MFA Mut. Ins. Co., *supra:*

"[T]his Court believes that it is commonly known that the cost of liability insurance does not increase proportionately with the policy limits. The cost of increased limits of which the Court takes judicial notice, is relatively small when compared to the cost of minimum coverage." 384 F.2d at 114, *quoting* from the trial court's opinion.

We therefore believe the more equitable basis for proration should be according to the maximum loss which each company could have sustained in the particular case, absent the other insurance coverage.

The judgment of the trial court is reversed and this matter is remanded with directions to determine the maximum loss each insurer could have sustained in this case in the absence of the other insurer and enter judgment prorating the liability of Rocky Mountain and Allstate based upon this determination, and to further find that each has an obligation to defend the Estate of James J. McGowan, the cost of such defense to be borne on the same pro rata basis as liability.

EUBANK, P. J., and HAIRE, J., concur.