490 F.2d 407
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a mutual
insurance company organized and existing under the
laws of the State of Illinois, Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation,
et al., Appellees.
 No. 73-1496.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 2, 1973.
Decided Jan. 9, 1974.
 
 Jack A. Mann, Beckley, W. Va. (Lynch, Mann & Knapp, Beckley, W. Va., on brief), for appellant.
 Ben B. White, Jr., Princeton, W. Va., for appellees.
 Before HAYNSWORTH, Chief Judge, and RUSSELL and FIELD, Circuit Judges.
 FIELD, Circuit Judge:
 
 
 1
 This appeal involves a controversy relative to the rights and obligations of two insurance companies under their respective policies of automobile liability insurance. The factual background of the dispute is not an unfamiliar one.
 
 
 2
 A & T Pontiac-Buick, Inc., of Bluefield, West Virginia (A & T), delivered a 1967 Mustang automobile to Earnest P. Watkins, a prospective purchaser, on March 16, 1970, so that he might try it out to determine whether he would buy it. A few days later, on March 19th, Mrs. Watkins, at the direction of her husband, called the garage, advising them that Watkins did not desire to purchase the car and requesting that they send someone to get it. The garage had no one available to pick up the car on that day, and on the following day Watkins permitted his son to drive the automobile on personel business. While driving the car the younger Watkins lost control of the vehicle and wrecked it, killing one of his passengers and injuring two others. Claims were asserted by the injured passengers and by the administrator of the deceased passenger against the Watkins as well as A & T.
 
 
 3
 At the time of the accident State Farm Mutual Automobile Insurance Company (State Farm) had in effect a liability policy which covered Earnest P. Watkins, his wife, and his son as named insureds, the vehicle described in the policy being a 1969 Buick. By its terms the policy extended protection to the Watkins while using a nonowned automobile. A & T was covered by a garage liability policy issued by United States Fidelity and Guaranty Company (U.S.F. & G.), which policy contained an omnibus clause subject, however, to a limited coverage endorsement.
 
 
 4
 The district court was presented with two issues: (I) Was the vehicle being used by Watkins' son in the automobile business at the time of the accident within the meaning of the exclusionary provision of State Farm's policy; and (II) what effect should be given to the respective 'other insurance' provisions of the State Farm and U.S.F. & G. policies.
 
 I.
 
 5
 The State Farm policy contained a provision that its coverage did not apply to a non-owned automobile 'while maintained or used by any person while such person is employed or otherwise engaged in an automobile business of the insured or of any other person or organization.' State Farm takes the position that since the Mustang was delivered to Earnest R. Watkins as a customer of an automobile dealer, it was a non-owned automobile which was being used in the automobile business at the time of the accident and the foregoing exclusionary provision would apply. Upon a review of the stipulated facts, the district court concluded that any dealer-customer relationship terminated at the time Mrs. Watkins advised A & T her husband did not intend to purchase the car, and that any subsequent use of the car by Watkins or his son was for their own personal convenience and in no way incidental to the automobile business. The district judge further concluded that since Watkins' son was driving the vehicle with the permission of A & T, he was covered by the non-owned automobile provision of the State Farm policy.
 
 
 6
 While the stipulated facts support this conclusion of the district court, we are of the opinion that the plain language of the policy itself also requires such a result. The policy defines 'Automobile Business' as 'the business or occupation of selling, leasing, repairing, servicing, storing or parking of land motor vehicles or trailers.' The exclusionary provision by its terms applies only where the person for whom coverage is sought is himself employed or engaged in the automobile business within the definitional terms of the policy, and as stated in Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 146 S.E.2d 410, 417 (1966), 'it would be a strained construction of the phrase 'used in the automobile business' to apply it to a prospective purchaser of a vehicle who is 'trying it out' to see if he likes it.' We think that the policy provision with respect to the use of a nonowned automobile, like the standard omnibus clause, should receive a liberal interpretation in favor of the insured to protect not only him but the general public as well. See Chatfield v. Farm Bureau Mut. Auto Ins. Co., 208 F.2d 250 (4 Cir. 1953), and Goforth v. Allstate Insurance Company, 220 F.Supp. 616 (W.D.N.C.1963), aff'd per curiam, 4 Cir., 327 F.2d 637. Since we conclude that young Watkins was not using the vehicle in the automobile business at the time of the accident, the exclusion does not apply.
 
 II.
 
 7
 The second issue with respect to the question of the 'other insurance' provisions of the policies presents a more troublesome problem.
 
 
 8
 The State Farm policy had a limit of liability of $20,000 for each person and $40,000 for each accident and contained a provision that the insurance thereunder with respect to non-owned automobiles 'shall be excess over other collectible insurance.' The U.S.F. & G. policy was designed primarily to cover A & T in the conduct of its automobile sales and service business and contained limits of liability of $100,000 for each person and $300,000 for each occurrence. The policy, however, carried the following endorsement:
 
 
 9
 'LIMITED COVERAGE FOR CERTAIN INSUREDS
 
 
 10
 'In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not Insureds with respect to the automobile hazard except in accordance with the following additional provisions:
 
 
 11
 1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.
 
 
 12
 2. If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.
 
 
 13
 3. If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit.
 
 
 14
 4. As used in this endorsement: 'applicable financial responsibility limit' refers to the applicable limit of the financial responsibility law of the state where the automobile is principally garaged. * * *.'
 
 
 15
 Under West Virginia's financial responsibility law[1] the limits of the liability of U.S.F. & G. under this endorsement were $10,000 for each person and $20,000 for each accident.
 
 
 16
 Confronted with a conflict between the 'excess clause' of the State Farm policy and the 'escape clause' of the U.S.F. & G. policy, the district judge concluded that the escape clause of the U.S.F. & G. policy should prevail over the excess clause of the State Farm policy and accordingly that State Farm was the primary insurer. While West Virginia has no decisional or statutory law controlling on this issue, we are inclined to the opinion that the highest court of that state would reach a conclusion different from that of the district court.
 
 
 17
 With the expanded scope of coverage provided by automobile insurance policies, the problem of 'other insurance' clauses has provided a fertile field for litigation. The three principal types of such clauses are (1) excess clauses, which limit the insurer's liability to that in excess of any liability covered under other available insurance; (2) pro rata clauses, which limit the insurer's liability to its pro rata share of the loss in the proportion that its policy limits bears to the aggregate of available liability coverage; and (3) escape clauses, which provide indemnity only in the event that other liability insurance is unavailable. While the books are replete with cases involving conflicts between various combinations of such clauses, it would appear that conflicts between one policy containing an escape clause and another containing an excess clause have generated more litigation than any other.[2]
 
 
 18
 A review of the welter of cases in this area reveals that the courts have generally adopted one of three approaches. One line of cases has resolved the conflict by imposing liability on the insurer whose policy contains the escape clause, reasoning that the policy with the excess clause does not in fact provide other valid and collectible insurance within the meaning of the escape clause of the other policy.[3] Other courts have taken precisely the opposite view, giving full effect to the escape clause and holding the insurer whose policy contains the excess clause primarily liable.[4] These courts have taken the position that the existence of an excess policy is sufficient to relieve the policy with the escape clause from coverage. In some cases this latter result has been justified upon the basis that an escape clause couched in the language such as that in the U.S.F. & G. policy in the present case specifically excludes coverage where there is other insurance either 'primary, excess or contingent.'[5]
 
 
 19
 Finally, the third group of cases has held that the conflicting clauses should be disregarded as mutually repugnant and the loss pro rated according to the primary limits of liability of each policy. These cases candidly admit that the two clauses are irreconcilable, and that any attempt 'to solve the problem by picking up one policy, and reading it with a result which would be opposite to that reached if the other policy were first in order, is at best a psuedo-solution in that it only aggravates a circular riddle.'[6] The futility of attempting to find a solution within the language of the respective policies is stated in the oftquoted concurring opinion of Judge Tate in State Farm Mutual Auto Ins. Co. v. Travelers Ins. Co., 184 So.2d 750, 753-754 (La.App.1966):
 
 
 20
 'In Lincombe, we correctly held it was impossible to reconcile the respective 'excess' and escape' clauses in the two policies. Indeed, there is actually no way by logic or word-sense to reconcile two such clauses, where each policy by itself can apply as a primary insurer, but where the clause in each policy nevertheless attempts to make its own liability secondary to that of any other policy issued by a similar primary insurer: For then the primary and (attempted) secondary liability of each policy chase the other through infinity, something like trying to answer the question: which came first, the chicken or the egg?'
 
 
 21
 In all deference, it appears to us that those courts which have permitted one of the litigants to emerge victorious in this 'battle of semantics' have done little to advance the cause of effective insurance coverage and have merely encouraged the insurance companies to continue their duel of legal specificity. We agree with the statement of the court in Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co., 175 N.W.2d 413, 417 (Iowa 1970), that 'this case can be more equitably resolved by a return to settled principles which give dominant consideration to rights of the insured who should have coverage no less than if she had been protected by only one of the policies. This approach is predicated on the principle that policies should be construed liberally in favor of the rights of an insured, strictly against the insurer.'
 
 
 22
 While, as we have noted, the West Virginia Court has not had occasion to venture into these waters, it is our considered judgment that it would choose to associate itself with those courts which have decided the time has come to call a halt to the continuing draftsmanship battle by which insurers seek to 'outspecific' one another in an attempt to shift the primary burden of a loss on to the other insurer involved. We believe such a choice is supported by the better reasoning and accords with the growing weight of authority. Gilkey v. Andrew Weir Insurance Company, 291 F.2d 132 (9 Cir. 1961); Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 195 F.2d 958 (9 Cir. 1952); United States Fidelity & Guar. Co. v. Liberty M.I. Co., Boston, 327 F.Supp. 462 (M.D.Pa.1971); Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co., supra; Rocky Mountain Fire & Cas. Co. v. Allstate Ins. Co., 13 Ariz.App. 31, 474 P.2d 38 (1970); Hardware Dealers Mutual F. Ins. Co. v. Farmers Ins. Exch., 437 S.W.2d 390 (Tex.Civ.App.1969); Graves v. Traders & General Ins. Co., 252 La. 709, 214 So.2d 116 (1968); Lincombe v. State Farm Mutual Automobile Insurance Company, 166 So.2d 920 (La.App.3d Cir. 1964).
 
 
 23
 Accordingly, we hold that the clauses in question are mutually repugnant and should be disregarded, and that the loss and expenses of litigation should be pro rated between the companies in proportion to their respective maximum policy limits.[7] The docree of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 24
 Reversed and remanded.
 
 
 
 [1]
 W.Va.Code 17D-4-2
 
 
 [2]
 47 Tul.L.Rev. 1039, 1043
 
 
 [3]
 Employers Liabil. Assur. Corp. Ltd. v. Fireman's F. Ins. Gr., 104 U.S.App.D.C. 350, 262 F.2d 239 (1958); Zurich Gen. Accident & Liabil. Ins. Co. v. Clamor, 124 F.2d 717 (7 Cir. 1941)
 
 
 [4]
 Indiana Lumbermens Mutual Insurance Co. v. Mitchell, 409 F.2d 392 (7 Cir. 1969); Phoenix Ins. Co. v. Nationwide Mut. Ins. Co., 335 F.Supp. 671 (D.Mont.1972); Allstate Insurance Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.E.2d 436 (1967)
 
 
 [5]
 See 409 F.2d 392, 395, supra n. 4
 
 
 [6]
 Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co., 175 N.W.2d 413, 417 (Iowa 1970)
 
 
 [7]
 In the instant case since State Farm's applicable policy limits are $20,000/$40,000 and U.S.F. & G's applicable policy limits are $10,000/$20,000, State Farm is responsible for two-thirds of the loss and U.S.F. & G. for one-third