647 P.2d 634

INDUSTRIAL INDEMNITY COMPANY,
a California corporation,
Plaintiff-Appellee,

v.

Thomas BEESON and Jane Doe Beeson, husband and wife; Richard Impson and Jane Doe Impson, husband and wife; and Horace Mann Mutual Insurance Company, an Illinois corporation, Defendants-Appellants.

No. 1 CA–CIV 4843.

Court of Appeals of Arizona,
Division 1, Department B.

March 23, 1982.

Rehearing Denied May 12, 1982.

Review Denied June 8, 1982.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by Larry Smith, Ralph Hunsaker, Phoenix, for plaintiff-appellee.

Weyl, Guyer, MacBan & Olson by Robert A. Guyer, Thomas G. Bakker, Daryl Manhart, Phoenix, for defendants-appellants.

OPINION

JACOBSON, Presiding Judge.

The major issue presented by this appeal is under what circumstances may an insurer be bound by prior litigation in which its insured was not a party.

This action was instituted by plaintiff-appellee, Industrial Indemnity Company (Industrial Indemnity) seeking indemnity or contribution from defendant-appellant, Horace Mann Insurance Company (Horace Mann) and its insureds, Thomas Beeson and Richard Impson, for a settlement paid by Industrial Indemnity in a lawsuit entitled *Syfert v. Phoenix Union High School District.* The trial court, by granting a partial summary judgment, determined that Horace Mann and the individual defendants were liable to Industrial Indemnity and left for trial the issue of whether the settlement reached in the Syfert litigation was reasonable.

Following the trial as to the reasonableness of both the settlement and the amount, the trial court determined that the settle-

ment of the Syfert litigation was reasonable and entered judgment in favor of Industrial Indemnity and against Horace Mann and the individual defendants for the sum of $257,777.78. The defendants have appealed.

The facts surrounding the litigation in *Syfert v. Phoenix Union High School District* are central to the issues presented in this appeal. On March 29, 1973, Timothy Syfert, a student at East High School in Phoenix, Arizona (East High School is a part of the Phoenix Union High School District) was seriously injured while performing a gymnastic routine on a trampoline during school hours. At this time Thomas Beeson and Richard Impson were coaches and instructors in physical education at East High School. Syfert's injuries resulted in him being rendered a complete quadriplegic.

On May 16, 1973, Syfert brought an action seeking damages for his injuries against Phoenix Union High School District, its Board of Education and various fictitious corporate defendants (Syfert litigation). The Syfert complaint was in two counts. Count one alleged that Syfert's injuries were the result of the "negligence of the Defendant by and through its agents, servants and/or employees . . . ." None of the individual "agents, servants or employees" of Phoenix Union High School District were named as parties to the action.

Count two of the complaint sounded in strict liability for the alleged defects in design or manufacture of the trampoline. This count was apparently abandoned during the course of litigation, as the corporate defendants which might be liable under this count were never named, identified or made parties to the litigation.

At the time of the Syfert incident, the primary insurer for Phoenix Union High School District was Hartford Accident and Indemnity Company which provided primary coverage in the sum of $100,000. The Phoenix Union High School District also carried excess coverage with Industrial Indemnity under a "Comprehensive Catastrophic Liability Policy" in the amount of $5,000,000. It is conceded that the individual teachers and instructors of the district were insureds under both of these policies.

In addition, at this time, Beeson and Impson, as members of the Arizona Education Association, were also insured under a group policy issued by Horace Mann, which provided "excess" coverage in the sum of $200,000 for each occurrence of liability.

It appears that early in the course of litigation, the "agents, servants or employees" of the district who might have been negligent in causing Syfert's injuries were identified as coaches Beeson and Impson. The local claims manager of Horace Mann was aware of this involvement and in July, 1973, informed Horace Mann that "[t]here is a possible involvement of the P.E. instructor, Thomas Beeson." However, Horace Mann was also informed, "To date, neither of our insureds have been served so I am not counting this as a suit file until they are." The local claims manager obtained a copy of the complaint and was apparently made privy to developments in the litigation. Thus, on February 5, 1974, the local claims manager informed Horace Mann that information received "does create the semblance of the possible negligence on the part of our insured." Horace Mann had no other contact with this litigation until late in the proceedings.

As discovery progressed it appeared that Syfert had two viable theories of liability against the school district. One theory was based upon the fact that prior to performing the trampoline exercise, Syfert had engaged in a boxing match where he was knocked down and struck his head. His physical education instructors knowing of this incident and Syfert's groggy condition allowed him to perform the trampoline exercise. The other theory of liability was that the school district was negligent in allowing trampoline exercises at all, these being inherently dangerous. (It appears that at the time of the Syfert accident, most Arizona high schools had dropped trampoline exercises because of their dangerous character).

As previously indicated, although Beeson and Impson were early identified as the logical individual defendants in the Syfert litigation, they were never named as parties to the action. This was the result of trial strategy by both the counsel for plaintiff and counsel for the school district. From the plaintiff's standpoint he had already sued the "deep pocket" and counsel was concerned that the addition of two young, attractive coaches, as potentially liable defendants, might affect the amount of a jury's verdict.

From the standpoint of counsel for the school district, the addition of Beeson and Impson as individual defendants was seen as a detriment in two respects: (1) their credibility as witnesses might be enhanced in the eyes of the jury, if the jury thought they would not be individually liable for any damages, and (2) the appearance of individual counsel for these defendants might assist the plaintiff's lawsuit by these counsel attempting to shift liability away from their individual clients and onto the school district. In any event Beeson and Impson were never made parties to the Syfert litigation.

Trial was set in the Syfert action for January 6, 1975. As is normal, settlement negotiations heated up in the month preceding trial. Although the record is not clear as to when a bargain was struck between Syfert and the school district, on December 27, 1974, counsel for the school district contacted Horace Mann and invited it to participate in discussions concerning settlement and defense alternatives. Horace Mann refused to attend. On December 30, 1974, counsel for Industrial Indemnity wrote Horace Mann informing it that it had been determined that the sole basis of liability of the school district was the negligence of Beeson and Impson, Horace Mann's insureds. Horace Mann was again invited to participate in all discussions concerning settlement and the future progress of the Syfert litigation. The letter went on to state:

> In the event you determine not to participate, you should be advised that any negotiation and settlement will be without prejudice to the right of the district's insurers to seek indemnity from your company for sums paid in settlement.

On January 6, 1975, the trial court was informed that the Syfert litigation had been settled; Syfert to receive $825,000. Of this amount, Hartford, as primary insurer, paid its policy limits of $100,000 and Industrial Indemnity as excess carrier paid $725,000. This settlement was the subject matter of a minute entry entered by the trial court on January 7, 1975. On January 9, 1975, counsel for Syfert and the school district filed a pretrial order which in essence stated that the sole factual issue to be tried was whether coaches Beeson and Impson were negligent in their handling of or instructions to Syfert following Syfert's knock down in the boxing match.

It is Industrial Indemnity's position, both before the trial court and on appeal, that based upon the pretrial order the sole basis of the school district's liability was the negligence of Horace Mann's insureds, Beeson and Impson; that Horace Mann was given an opportunity to participate in that litigation and settlement negotiations and refused; that given the reasonableness of the settlement Industrial Indemnity is entitled to indemnity or contribution from the insurer whose insureds' negligence caused the loss.

Horace Mann's position, basically, is that it is not bound by the pretrial order settling the sole issue of liability, as it or its insureds were not a party to that litigation; that it was not afforded any meaningful control of the Syfert litigation so as to be bound by that lawsuit; and that it has been denied its day in court to determine whether the risk it insured—the negligence of Beeson and Impson—was the cause of Syfert's injuries.

Before discussing these contentions, it is necessary to clear up some confusion surrounding the theory upon which Industrial Indemnity seeks recovery. In some portion of Industrial Indemnity's briefs before this court it refers to its theory of recovery as that of indemnity and that since the school district's liability was based upon principles

of *respondeat superior*, it is entitled to be indemnified by its employees whose negligence gave rise to that liability. *See* Restatement (Second) of Agency § 219, at page 481 (1958).

On the other hand, it is clear that Industrial Indemnity does not seek the total amount of its loss from Horace Mann, but only a pro rata share of its loss by way of contribution. Such a contribution theory is based upon the equitable principle that "where two companies insure the same risk and one is compelled to pay the loss, it is entitled to contribution from the other." *Universal Underwriters Insurance Co. v. Dairyland Mutual Insurance Company*, 102 Ariz. 518, 520, 433 P.2d 966, 968 (1967).

These two theories have their genesis in two separate and distinct relationships—indemnity being based upon the existence of an employer-employee relationship (Phoenix Union employing Beeson and Impson) and contribution being based upon the relationship of two insurers insuring the same risk (Industrial Indemnity and Horace Mann both insured the negligence of Beeson and Impson).

It is clear that Industrial Indemnity must couch its theory of recovery in terms of indemnity for it contends that Horace Mann is bound by the results of the prior Syfert litigation. This principle is stated in Restatement of Judgments § 107 at page 511 (1942):

> In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against
>> (a) the indemnitee, both are bound as to the existence and extent of the liability of the indemnitee, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense . . . .

To paraphrase the text of the Restatement, *id.*, in this action for indemnity, Beeson and Impson as indemnitors would have the duty of indemnifying Phoenix Union, the indemnitee, upon the claim made by Syfert, a third party who obtained a valid judgment against Phoenix Union in a separate action. Both Beeson and Impson as indemnitors and Phoenix Union as the indemnitee are bound to the existence and extent of Phoenix Union's liability as long as Phoenix Union gave reasonable notice to Beeson and Impson as its indemnitors and requested them to defend or participate in the defense.

During the course of the Syfert litigation, Industrial Indemnity, as insurer of Phoenix Union and its employees, and actively engaged with the defense of that action, gave notice of pendency of the action to Horace Mann, as insurer for Beeson and Impson and requested Horace Mann to participate "in discussion of settlement and defense alternatives." Horace Mann questions whether (assuming it was obligated to defend an action in which its insureds were not named as parties defendant) the request was sufficient in form and context to constitute a request to defend. It contends that because of the limited nature of the request (i.e. not to "defend" but to "participate in discussions," etc.) and the timing thereof (on the eve of settlement) it had no reasonable opportunity to actually defend the lawsuit or to participate in the defense in a meaningful way. We are inclined to view the record as inconclusive in this respect and hence we conclude that a finding is unwarranted that Industrial Indemnity's notice and demand to Horace Mann, as a matter of law, placed Industrial Indemnity in a position to demand indemnity from Horace Mann.

■ However, Horace Mann has presented more cogent reasons for denying the right of indemnity in this case. It contends it would be contrary to public policy to permit Industrial Indemnity, by way of subrogation, to step into the shoes of Phoenix Union and recover indemnity from its own insureds Beeson and Impson, as employees of Phoenix Union, based on their negligence, as that would be tantamount to permitting an insurer to recover from its own insureds for the very risk insured against.

The rule is aptly stated in *St. Paul Fire and Marine v. Murray Plumbing and Heating Corporation*, 65 Cal.App.3d 66, 135 Cal. Rptr. 120, 126 (1976), quoting from *Home Insurance Co. v. Pinski Brothers, Inc.*, 160 Mont. 219, 500 P.2d 945, 949 (1972):

> No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons to whom the insurer owes no duty. 16 Couch on Insurance 2d, § 61:133 [other citations omitted].

> \* \* \* \* \* \*

> To allow subrogation under such circumstances would permit an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured and thus avoid the coverage which its insured purchased.

Horace Mann argues that since admittedly Beeson and Impson are insureds under Industrial Indemnity's policy, the rule is applicable here. Industrial Indemnity argues that this rule is not applicable because "this action is not one directed against Beeson and Impson, but is one seeking to require Horace Mann to perform the terms of its insurance contract with the Arizona Education Association" and that "[i]n truth, there is no direct action by Industrial Indemnity against either Beeson and Impson."

If the purpose of the action against Horace Mann is to bind it to the prior litigation through principles of subrogation seeking indemnity, we disagree. In this area, the case of *Sherwood Trucking, Inc. v. Carolina Casualty Insurance Company*, 552 F.2d 568 (4th Cir. 1977) is instructive. In *Sherwood Trucking*, the trucking company which was insured by Reserve Insurance Company, leased a truck owned by one Lawson, who was insured by Carolina Casualty Insurance Company and which was driven by one Parker. Under the terms of the Reserve policy, both Lawson and Parker were additional insureds. Parker, while driving the truck, negligently caused an accident which resulted in a death, personal injuries and proper-

ty damage. Reserve settled the ensuing litigation and sought recovery from Carolina, the insurer of Lawson and Parker. In denying recovery to Reserve, the court noted that Lawson and Parker were insureds under the Reserve policy and held, quoting from *Builders & Mfrs. Mut. Cas. Co. v. Preferred Automobile Ins. Co.*, 118 F.2d 118, 121–22 (1941), that:

> [t]he rule that an insurer who has paid the loss resulting from a peril insured against may be subrogated to all the claims which the insured may have against any person by whose negligence the injury was caused does not apply in a case where the injury was caused by the negligence of the insured himself.

552 F.2d at 572–73. The court then went on to hold:

> Because Reserve may not in its own name or through any claimed subrogated right it may have in the name of Sherwood claim a duty of indemnity from its own insured, we are of [sic] opinion it may not recover in this case against Carolina, Lawson's insurance carrier, any more than it could have recovered against Lawson.

552 F.2d at 573.

We believe this analysis is applicable here. Industrial Indemnity cannot have it both ways. They cannot maintain that Beeson and Impson (and hence Horace Mann) are bound by the prior separate litigation (under principles of *res judicata* between indemnitee and indemnitor) and at the same time maintain that the cause of action is not against Beeson and Impson, but against their insurer, Horace Mann. For the purpose of determining the binding effects of the prior litigation, Beeson and Impson and Horace Mann are in the same shoes and Industrial Indemnity is precluded from seeking indemnity from its insured, for to do so would allow Industrial Indemnity to sue its own insured, which is prohibited.

This does not mean that Industrial Indemnity may not seek contribution from Horace Mann under the equitable principle that where two insurers insure the same

risk and neither is the primary insurer, both should contribute *pro rata* to the loss caused by the risk insured against. Such an action for contribution is not derivative from any third person, but exists as an independent action by one insurer against another under principles of equity. *St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.*, 25 Ariz. App. 309, 543 P.2d 147 (1975); 6 J. Appleman, Insurance Law and Practice § 3902 (1961).

However, in order for Horace Mann to be bound by the Syfert litigation, Industrial Indemnity in its action for contribution must point to some duty on behalf of Horace Mann which it breached and which would now make it "fair that [Horace Mann] should abide by the result of the [prior] trial." Restatement of Judgments § 107, Comment (c) at page 514 (1942).

While we need not here explore the perimeters of *res judicata* in actions involving contribution, there must exist at least some duty on behalf of the insurer against which contribution is sought to accept the duty of defending the prior action before principles of *res judicata* may attach. Here, no such duty on behalf of Horace Mann arose for its insureds were never made parties to the Syfert litigation. *Navajo Freight Lines, Inc. v. Liberty Mutual Insurance Co.*, 12 Ariz.App. 424, 471 P.2d 309 (1970).

It would be an anomaly indeed to hold that an insurer is bound by a prior litigation between strangers to its contract of insurance. We therefore hold that the Syfert litigation is not binding upon Horace Mann, under the circumstances presented here, in an action against it for contribution.

It is axiomatic that in order for Industrial Indemnity to establish the liability of Horace Mann for contribution it must prove the *sine qua non* for that contribution—that Industrial Indemnity and Horace Mann insured the same risk, the negligence of Beeson and Impson. Since we have held that Industrial Indemnity may not prove this essential fact by merely pointing to the Syfert litigation (and no other proof being offered) it follows that Industrial Indemni-

ty did not establish the liability of Horace Mann and therefore summary judgment in its favor was improper.

Since this matter must be remanded for the purposes of determining whether the loss paid by Industrial Indemnity was one against which Horace Mann also insured, we touch upon two additional points to simplify the issues on remand. First, the amount of the settlement reached by Industrial Indemnity was established as being fair and reasonable and therefore must form the basis for any prorated liability, if any, of Horace Mann.

Second, the trial court's calculation of the proration between Industrial Indemnity and Horace Mann was correct, assuming that Industrial Indemnity on remand establishes that it is entitled to contribution and further assuming that Industrial Indemnity is able to show that both Beeson and Impson were negligent in causing Syfert's injuries.

The trial court adopted a proration formula based upon this court's ruling in *Rocky Mountain Fire & Casualty Co. v. Allstate Insurance Company*, 13 Ariz.App. 31, 474 P.2d 38 (1970), *vacated on other grounds*, 107 Ariz. 227, 485 P.2d 552 (1971). We readopt the reasoning of *Rocky Mountain*, as follows:

Having determined that the loss as between the insurers must be prorated, the problem still remains upon what basis this proration should be made.

The prevailing rule in proration cases seems to make the proration according to the policy limits of each insurance policy. [Citations omitted]. This result seems to us to be somewhat arbitrary for as was pointed out in *Employers Mut. Cas. Co. v. MFA Mut. Ins. Co., supra*:

"[T]his Court believes that it is commonly known that the cost of liability insurance does not increase proportionately with the policy limits. The cost of increased limits of which the Court takes judicial notice, is relatively small when compared to the cost of minimum coverage." 384 F.2d [111] at 114, *quoting* from the trial court's opinion.

We therefore believe the more equitable basis for proration should be according to the maximum loss which each company could have sustained in the particular case, absent the other insurance coverage.

13 Ariz.App. at 37, 474 P.2d at 44.

Horace Mann argues that if "maximum loss" rather than "policy limits" is the basis of proration, its "maximum loss" should only be $200,000 rather than $400,000 ($200,000 on each policy) since its policy only provided coverage of no more than $200,000 "per occurrence" and Syfert's injuries constituted but one occurrence. This argument overlooks the fact that it issued two policies of insurance—one to Beeson and one to Impson. Under these policies Horace Mann owed a duty of coverage to each in the sum of $200,000. Thus, if Beeson is negligent, he is entitled to $200,000 coverage for that negligence. Likewise, if Impson is negligent, he is also entitled to $200,000 in coverage. Thus, Horace Mann's potential liability for this accident, again assuming both insureds are negligent, is $400,000.

The judgment of the trial court is reversed and the matter remanded for proceedings consistent with this opinion.

CORCORAN, J., and McFATE, J. (retired), concur.

Note: The Honorable Yale McFate, a retired judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 20.