724 P.2d 578

**NATIONAL INDEMNITY COMPANY, a Nebraska corporation, Plaintiff-Appellant,**

v.

**The ST. PAUL INSURANCE COMPANIES, a Minnesota corporation, Defendant-Appellee.**

**No. 1 CA–CIV 7142.**

Court of Appeals of Arizona,
Division 1, Department B.

May 7, 1985.

Renaud, Cook & Videan, P.A. by Robert M. Geiger, Phoenix, for plaintiff-appellant.

Jones, Skelton & Hochuli by Edward G. Hochuli and Donald L. Myles, Jr., Phoenix, for defendant-appellee.

## OPINION

GREER, Judge.

The issue in this case is whether one insurer may recover from a second insurer for contribution for the costs of defense of their mutual insured. We find that such contribution is proper and reverse the

granting of summary judgment in favor of the non-contributing insurer.

The facts are not in dispute. Long's Portable Stalls, Inc., leases portable horse stalls. Long's was insured by appellant National Indemnity Company (National). Long's leased portable barns to the Aid to Zoo National Horse Show and the Phoenix Zoo Auxiliary (PZA). Pursuant to the lease agreement, the lessees obtained a policy of insurance with appellee St. Paul Insurance Companies (St. Paul), for general liability from February 18, 1980 to February 25, 1980. Long's was named as an additional insured and as the certificate holder. On February 19, 1980, two horses, named "The Omen" and "Lady Doc," were accidentally electrocuted in portable stalls supplied by Long's.

The owners of Omen sued Long's and others in Cause No. C–413027; while the owners of Lady Doc sued Long's and others in No. C–417358. National defended Long's in both actions, but St. Paul refused to participate in the defense. The claim in C–413027 was settled by National for $1,000. St. Paul later agreed to pay one-half of the settlement, but refused to pay one-half of the $7,807.90 defense costs.

Later, C–417358 was settled. Once again, St. Paul agreed to reimburse National for one-half of the settlement costs, but refused to reimburse National for one-half of the costs of defense. The cost of defense to National in C–417358 was $9,974.89.

The present appeal began as a declaratory judgment action filed by National against St. Paul for contribution for the costs of defense in C–413027 and settlement and defense in C–417358. After St. Paul contributed to the costs of settlement in C–417358, that claim became moot.

National then filed a motion for summary judgment on the issue of whether or not it could obtain contribution for the costs of defense in the two actions. St. Paul responded, and also filed a cross-motion for summary judgment. The trial court granted St. Paul's cross-motion and entered a declaratory judgment dismissing National's complaint.

In short, National argues on appeal that since St. Paul failed to defend, it should be required to reimburse National for one-half of the expenses of the defense of their mutual insured. Appellant acknowledges that an opinion of division two of this court, *Arizona Joint Underwriting Plan v. Glacier General Ins. Co.*, 129 Ariz. 351, 631 P.2d 133 (App.1981), is precisely on point, although contrary to its position. Appellant urges this division to reject the conclusion reached by division two.

■ While it is true that one division of the Court of Appeals is not bound by a decision of the other division, only the most cogent of reasons will justify a divergence between the two. *Neil B. McGinnis Equipment Co. v. Henson*, 2 Ariz.App. 59, 406 P.2d 409 (1965). Therefore, a decision by division two, although not controlling, is certainly persuasive authority. *Scappatici v. Southwest Savings and Loan Ass'n*, 135 Ariz. 456, 662 P.2d 131 (1983).

■ Appellant argues that previous division one opinions suggest that the rule of reimbursement for defense costs would be followed in this division. In *Rocky Mountain Fire & Cas. Co. v. Allstate Ins. Co.*, 13 Ariz.App. 31, 474 P.2d 38 (1970), we held under similar facts that the non-defending insurer was liable for a pro rata share of whatever loss was determined and further found that:

> [E]ach [insurer] has an obligation to defend, ... the cost of such defense to be borne on the same pro rata basis as liability.

13 Ariz.App. at 37, 474 P.2d 38. This opinion, however, was vacated on other grounds by the Arizona Supreme Court at 107 Ariz. 227, 485 P.2d 552 (1971). Once an opinion of the Court of Appeals has been vacated by the Arizona Supreme Court, it is of no force and effect and is not authority. *Stroud v. Dorr-Oliver, Inc.*, 112 Ariz. 403, 542 P.2d 1102, *rehearing denied*, 112 Ariz. 574, 544 P.2d 1089 (1976).

In *Industrial Indem. Co. v. Beeson*, 132 Ariz. 503, 647 P.2d 634 (App.1982), this court again recognized the rule that where two insurers insure the same risk, and one insurer pays the loss, the paying insurer is entitled to a pro rata contribution from the non-paying insurer. However, we did not, at that time, readopt the portion of *Rocky Mountain* requiring contribution for defense costs.

After again considering this question, we choose to readopt the portion of the *Rocky Mountain* opinion requiring contribution by the non-defending insurer to the defense costs incurred by the defending insured. We recognize contrary authority from other jurisdictions, e.g., *Transamerica Ins. Group v. Empire Mut. Ins. Co.*, 31 Conn. Supp. 235, 327 A.2d 734 (1974), but agree with the position stated in *Pacific Power & Light Co. v. Transport Indem. Co.*, 460 F.2d 959 (9th Cir.1972): "[W]here a question of proration as between companies is concerned, there appears little reason to distinguish between the defense costs and the principal liability under the policy coverage." 460 F.2d at 963.

In adopting the rule requiring contribution for defense costs, the California Supreme Court stated in *Continental Cas. Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961):

> A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by some other insurer at no expense to the company which declines to carry out its contractual commitments ... In our view, ... no insurer which deliberately breaches its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation.

366 P.2d at 461–62. *See also, Marwell Constr., Inc. v. Underwriters at Lloyd's*, 465 P.2d 298 (Alaska 1970).

*Arizona Joint Underwriting, supra*, and other decisions contrary to ours proceed on the theory that each insurer has an independent obligation to defend and that, absent an agreement between the insurers, there is no right to contribution for the costs of the defense. However, this reasoning has been the subject of strong criticism. For instance, 7C Appleman, *Insurance Law & Practice* § 4691 (1979), states:

> These holdings are indefensible. The courts are ignoring realities and encouraging insurers who are not concerned with their obligations to their insureds in the hope that someone else will ... step into the breach. Further, as a matter of public policy, courts should be demanding that insurers give prompt defense of claims to policyholders rather than to tolerate the shifting of responsibility with such impunity.

Section 4691 at 278. *See also Marwell, supra*, at 313.

We believe *Appleman's* criticism is well founded. As stated in *Beeson, supra*, the "action for contribution [to a settlement by the one insurer] is not derivative from any third person, but exists as an independent action by one insurer against another under principles of equity." 132 Ariz. at 508, 647 P.2d 634. If equity demands that the second insurer contribute to the cost of settlement, we see no reason why it does not equally demand that the second insurer contribute to the costs of defense. This is especially true where, as in the present case, the costs of defense exceed the amount of settlement.

■ Appellee suggests that it, in fact, was "there" because it was defending PZA. However, although PZA was the named insured under the St. Paul policy, Long's was also a named insured and was clearly the intended beneficiary of the policy. St. Paul cites no authority for the argument that its defense of a co-insured should excuse its failure to defend Long's or bar National's right to contribution for its costs in defending Long's. We do not find this argument persuasive.

## ATTORNEY'S FEES

 Both parties, pursuant to A.R.S. § 12–341.01(A), have requested attorney's fees incurred on appeal and in the trial court. Although attorney's fees were requested in both the complaint and the answer, they were not mentioned in the motion or cross-motion for summary judgment, and attorney's fees were neither awarded nor addressed in the judgment.

Arizona Revised Statutes § 12–341.01(A) provides for recovery of attorney's fees in an action "arising out of a contract, express or implied." In *Ash, Inc. v. Mesa Unified School Dist.*, 138 Ariz. 190, 673 P.2d 934 (App.1983), we interpreted this provision, stating, "Thus, as used in A.R.S. § 12–341.01, the words, 'arising out of a contract' describe an action in which a contract was a factor causing the dispute." 138 Ariz. at 192. Analogously, in *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982), our supreme court, in discussing attorney fee awards for claims sounding in tort, stated, "The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under A.R.S. § 13–341.01(A) as long as the cause of action in tort could not exist *but for* the breach of the contract." 132 Ariz. at 543, 647 P.2d 634. Here, but for the two insurance contracts with Long's, there would be no dispute. Further, recovery of attorney's fees under the statute may be granted even if the successful party plaintiff was not a party to the contract which formed the basis of the claim. *See Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 573 P.2d 80 (App. 1977) (to be awarded attorney fees under A.R.S. § 12–341.01, a successful party defendant need not have been a party to the contract).

## CONCLUSION

For the above-stated reasons, the matter is reversed and remanded with instructions to the trial court to grant National's motion for summary judgment. We also grant appellant's request for attorney's fees incurred before the trial court and on appeal.

Appellants are directed to submit an affidavit in accordance with Rule 21(c), Arizona Rules of Civil Appellate Procedure, and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

KLEINSCHMIDT, P.J., concurs in the substantive result.