782 P.2d 723

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**Patricia WILSON and John Doe Wilson, her husband; and Michael Wilson, son of Patricia Wilson, Defendants–Appellees.**

No. 1 CA–CV 88–046.

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 10, 1989.

Review Granted April 18, 1989.

Jones, Skelton & Hochuli by Ronald W. Collett and Kevin D. Neal, Phoenix, for plaintiff-appellant.

Kunz & Waugh, Ltd. by Richard M. Waugh, Phoenix, for defendants-appellees.

OPINION

SHELLEY, Judge.

The sole question raised in this appeal is whether the underinsured provision of a motor vehicle insurance policy covers punitive damages.

The facts are undisputed. The appellee, Michael Wilson, purchased motor vehicle insurance from appellant State Farm Mutual Automobile Insurance Company (State Farm). The policy included an underinsured endorsement, which provided:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle.* The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle.*

(Emphasis in original.)

Wilson was subsequently involved in an accident with another vehicle. He sued the other driver and obtained a judgment for $5,000 compensatory and $20,000 punitive damages. The other driver's insurance did not cover punitive damages, so Wilson turned to State Farm for recovery of the punitive damages award under the underinsured provision of his policy.

State Farm filed a declaratory action to determine whether it was liable for the punitive damages. Upon the parties' cross-motions for summary judgment, the trial court granted summary judgment against State Farm, holding that it was liable for punitive damages. At oral argument, the trial judge indicated that he considered a Division 2 case, *State Farm Fire & Cas.*

*Co. v. Wise,* 150 Ariz. 16, 721 P.2d 674 (App.1986), to be controlling.

On appeal, State Farm first argues that the plain language of the underinsured motorist provision does not include punitive damages. It points out that the endorsement limits State Farm's liability to "damages for bodily injury," and that this clearly does not mean punitive damages. State Farm also suggests that *Wise* was incorrectly decided and that it is not in accord with *Price v. Hartford Accident & Indemnity Co.,* 108 Ariz. 485, 502 P.2d 522 (1972). It contends that Division 2 failed to take into account the distinctions between liability and uninsured coverage. In the alternative, State Farm argues that the trial court in this case failed to consider the distinctions between uninsured and underinsured coverage. Finally, State Farm argues that punitive damages are not contemplated by the underinsured statute, A.R.S. § 20–259.01(E), and that allowing them would defeat the public policy purpose of punitive damages.

Wilson primarily responds that the underinsured endorsement is ambiguous. Wilson also argues that *Wise* is controlling, and that *Wise* is a clear and logical extension of *Price.* He also points out that any distinctions between liability coverage on the one hand, and uninsured and underinsured coverages on the other, are immaterial to the interpretation of the policy provisions in *Wise* and this case. Wilson concludes by suggesting that in light of *Wise,* this appeal is frivolous and without merit, therefore justifying an award of attorney's fees and sanctions pursuant to Rule 25, Arizona Rules of Civil Appellate Procedure. He also requests attorney's fees pursuant to A.R.S. § 12–341.01, and Rule 21, Arizona Rules of Civil Appellate Procedure.

Our first determination must be whether the underinsured endorsement is ambiguous.

■ The pivotal sentence states, "We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle.*" The term "damages" is not defined in the policy. We agree that "damages" can be construed to include compensatory *and* punitive damages. *But see Nationwide Mut. Ins. Co. v. Knight,* 34 N.C.App. 96, 237 S.E.2d 341, 345 (1977) ("The commonly accepted definition of the term 'damages' does not include punitive damages.") Here, however, "damages" is qualified by the phrase "for bodily injury," which immediately follows it. "Bodily injury" is defined in the policy as "bodily injury to a person and sickness, disease or death which results from it." In our view, this unambiguously limits the type of damages available to those for bodily injury only. This court has previously determined that the term "bodily injury" is "self-explanatory and its meaning obvious to a lay person ..." *Campbell v. Farmers Ins. Co. of Arizona,* 155 Ariz. 102, 107, 745 P.2d 160, 165 (App.1987); *see also Bakken v. State Farm Mutual Auto. Ins. Co.,* 139 Ariz. 296, 300, 678 P.2d 481, 485 (App. 1983). In our opinion, a lay person would not construe "damages for bodily injury" to include punitive damages, which are awarded for the purpose of punishing the wrongdoer as well as to deter others from similar conduct. *See Acheson v. Shafter,* 107 Ariz. 576, 578, 490 P.2d 832, 834 (1971).

We conclude that the language of the underinsured endorsement is not ambiguous. It must therefore be construed according to its ordinary meaning. *Mid–Century Ins. Co. v. Duzykowski,* 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982). "Damages for bodily injury" does not include punitive damages.

Wilson nevertheless argues that the language in the underinsured endorsement is ambiguous when compared with the language in State Farm's *liability* provision, which State Farm concedes does cover punitive damages. The liability provision promises to pay damages "because of" bodily injury. We need not decide whether State Farm's concession is correct, since as used in these policies, the term "because of bodily injury" arguably has a broader and more inclusive meaning than the term "for bodily injury."

■ The underinsured provision does not expressly exclude punitive damages. In

*Wise,* Division 2 held that the absence of an express exclusion in an identically worded uninsured provision rendered the insurer liable for punitive damages. The court relied on *Price v. Hartford Accident & Indemnity Co.* for the proposition that an insurer's failure to specifically exclude punitive damages makes it liable for punitive damages. We disagree. *Price* stands for the more limited proposition that when an insurer has agreed to pay " 'all sums' for which either of them might become liable to pay as damages 'arising out of the ownership, maintenance or use' " of the insured automobile, it is not against public policy to require the insurer to meet its contractual obligation to pay punitive damages. *Price,* 108 Ariz. at 485–86, 502 P.2d at 522–23.

The *Price* court stated:

The clear, unequivocal language of the policy requires the insurance company to defend the action and pay the judgment. *The only issue, therefore, is whether the public policy of the state makes the insurance contract illegal insofar as it relates to punitive damages.*

... an insurance company which *admittedly* took a premium for covering *all* liability for damages should honor its obligation.

*Price,* 108 Ariz. at 487, 502 P.2d at 524. (Emphasis added.)

The only issue in *Price* was the public policy issue. The fact that the policy coverage included punitive damages was never an issue. Thus the quotations in *Price* from Appleman's *Insurance Law and Practice* which refer to expressly excluding liability for punitive damages were not the holding of the court. *Price* does not hold that punitive damages are included unless expressly excluded. A policy can be written so that it does not include punitive damages. If so written, an express exclusion is not necessary. The language of the uninsured provision in *Wise,* as well as the identically worded underinsured provision in this case, is far more restrictive than the liability provision in *Price.*

In its discussion of the public policy reasons for holding the insurer to its contract, the *Price* court stated it was impressed with the following language:

'[I]t is clear that the average insured contemplates protection against claims of any character caused by *his* operation of an automobile, not intentionally inflicted. When so many states have guest statutes in which the test of liability is made to depend upon wilful and wanton conduct, or when courts, in an effort to get away from contributory negligence of the plaintiff, permit a jury to find a defendant guilty of wilful and wanton conduct where the acts would clearly not fall within the common law definitions of those terms, the insured expects, and rightfully so, that *his* liability under those circumstances will be protected by his automobile liability policy.

\*   \*   \*   \*   \*   \*

'Of course, a policy could expressly exclude liability arising from wilful and wanton acts.... The author does not expect many decisions upon [such] clauses ... because as soon as the public became educated by competing agents to the limitations upon that policy, the public would refuse to accept it, and it would be unsaleable.

.     .     .     .     .

'In any event a court should not aid an insurer which fails to exclude liability for punitive damages. Surely there is nothing in the insuring clause that would forewarn an insured that such was to be the intent of the parties.'

*Price,* 108 Ariz. at 487–88, 502 P.2d at 524–25 (quoting 7 Appleman's *Insurance Law and Practice,* § 4312).

Both Appleman and *Price* were referring to liability coverage. The reasons for requiring an express exclusion of punitive damages in liability coverage are more compelling than for uninsured or underinsured coverage because the insured faces the potential of personal liability if his liability insurance does not cover those damages. As Appleman phrased it, the insured "expects" such coverage. With respect to uninsured or underinsured coverage, if punitive damages are not covered, the insured simply does not recover them. He has

already been compensated for his actual damages. *See Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). For all of these reasons, we cannot conclude that the policy's failure to expressly exclude punitive damages from its underinsured coverage renders punitive damages payable.

■ Wilson asserts that the decision of Division 2 in *Wise* is binding on Division 1. He quotes from *Tucson Gas & Electric Co. v. Superior Court*, 9 Ariz.App. 210, 212, 450 P.2d 722, 724 (1969) as follows:

Generally, the final decision of an intermediate appellate court, when not reviewed or otherwise set aside by an appellate court of higher authority, has the same finality as a decision of the highest court.

He posits that "This is especially true when the Arizona Supreme Court denies review as it did in *Wise*." The *Tucson Gas* case is inapposite. The case simply held that the trial court, upon reversal and remand of a case not reviewed or otherwise set aside by higher authority, must consider that decision as final and binding upon it. It does not preclude one division from declining to follow the decision of another division of the court of appeals.

In *Scappaticci v. Southwest Savings & Loan Assoc.*, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983), the Arizona Supreme Court stated:

"[T]he principle of stare decisis and the need for stability in the law in order to have an efficient and effective functioning of our judicial machinery dictate that we consider decisions of coordinate courts as highly persuasive and binding, *unless we are convinced that the prior decisions are based upon clearly erroneous principles*, or conditions have changed so as to render these prior decisions inapplicable." (Emphasis added.)

*Scappaticci* does not preclude *us* from determining that Division 2's opinion was based upon erroneous principles. The fact that the Arizona Supreme Court denied review in *Wise* is not controlling. In *Hagen v. United States Fidelity and Guaranty Ins. Co.*, 138 Ariz. 491, 675 P.2d 1310 (1984), the Arizona Supreme Court stated:

However, while denial of review *usually* attests our approval of the result reached by the court of appeals, it does not necessarily indicate our approval of the legal analysis contained in the opinion. (Emphasis added.)

■ It is clear from *Hagen* that denial of review by the supreme court does not necessarily attest its approval of the results. In *Calvert v. Farmers Insurance Company of Arizona*, 144 Ariz. 291, 297, 697 P.2d 684, 690 (1985), our supreme court stated in Fn. 5:

Although the petition for review was denied in both *Chambers [v. Owens*, 22 Ariz.App. 175, 525 P.2d 306 (1974) ] and *Rodriguez [v. Maryland Indem. Ins. Co.*, 24 Ariz.App. 392, 539 P.2d 196 (1975) ], such a denial of review does not mean we accepted the Court of Appeals' legal analysis or *conclusion* in those cases. *Denial of a petition for review has no precedential value.* (Emphasis added.)

*Wise* is not controlling on this court. Because we believe that *Wise* misreads *Price* to require an express exclusion of punitive damages, we decline to follow *Wise*.

In view of our disposition of this case, it is unnecessary for us to discuss the other issues raised in this appeal. We conclude that State Farm's underinsured provision does not cover punitive damages.

The judgment of the trial court is reversed and the trial court is directed to enter summary judgment in favor of State Farm. Wilson's request for attorney's fees on appeal is denied.

HAIRE, C.J., and GERBER, J., concur.