218 P.3d 1031

**STATE of Arizona, Appellee,**

v.

**Maurice PATTERSON, Appellant.**

**No. 1 CA–CR 08–0610.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 20, 2009.

Terry Goddard, Arizona Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and Aaron J. Moskowitz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Bruce F. Peterson, Legal Advocate by Consuelo M. Ohanesian, Deputy Legal Advocate, Phoenix, Attorneys for Appellant.

**OPINION**

BARKER, Judge.

¶ 1 This appeal asserts constitutional error based on an alleged geographical rule requiring a trial court confronted with conflicting decisions to follow the decision of the division of the court of appeals within which it is located. Finding that no such rule exists, we affirm Appellant's conviction and sentence.

**I.**

¶ 2 On June 9, 2008, a jury found Appellant Maurice Patterson guilty of possession of

narcotic drugs. Subsequently, the State proved that Patterson had two prior drug convictions: one for attempted possession or use of narcotic drugs and one for possession of narcotic drugs. Proposition 200, an initiative passed by the Arizona electorate, requires trial courts to sentence defendants convicted of certain drug crimes to probation or incarceration based on the defendant's number of drug convictions. Ariz.Rev.Stat. ("A.R.S.") § 13–901.01 (Supp. 2008). Under A.R.S. § 13–901.01(H)(1), a defendant who has "been convicted three times of personal possession of a controlled substance or drug paraphernalia" is ineligible for probation.

¶ 3 At issue during sentencing was whether Patterson's prior preparatory drug offense counted as a conviction under § 13–901.01(H)(1). Patterson argued that pursuant to *State v. Ossana*, 199 Ariz. 459, 18 P.3d 1258 (App.2001), a decision from a panel[1] in Division 2 of this court, he was eligible for probation because his conviction for attempted possession or use of a narcotic drug did not constitute a conviction under § 13–901.01(H)(1). The State argued that Patterson's preparatory drug conviction qualified as a conviction under § 13–901.01(H)(1) based on *Raney v. Lindberg*, 206 Ariz. 193, 76 P.3d 867 (App.2003). *Raney* is a subsequent decision from a panel in Division 1 that reached a conclusion contrary to *Ossana*. *Id.* at 199–200, 76 P.3d at 873–74. The trial court followed *Raney* and determined that Patterson's two convictions for possession of narcotic drugs and one conviction for attempted possession or use of narcotic drugs qualified as convictions under § 13–901.01(H)(1). Consequently, Patterson was not eligible for probation, and the trial judge sentenced him to 4.5 years imprisonment.

¶ 4 Patterson timely filed a notice of appeal. He alleges that the trial court violated his right to equal protection under the Arizona and United States Constitutions because of a purported geographical rule requiring a trial court presented with conflicting decisions from panels in Division 1 and Division 2 to apply the case law from the division within which the trial court is located.

¶ 5 We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A) (2001). We review Patterson's constitutional challenge de novo. *State v. Moody*, 208 Ariz. 424, 445, ¶ 62, 94 P.3d 1119, 1140 (2004). We also consider matters of statutory construction de novo. *Mejak v. Granville*, 212 Ariz. 555, 556, ¶ 7, 136 P.3d 874, 875 (2006).

## II.

¶ 6 In addressing Patterson's argument, it is helpful to review a brief history of the structure of our court and the statutory scheme that establishes it.[2] When the court of appeals was first created in 1965 it was composed of only six judges. Each judge sat in one of two separate divisions. There were no "departments" or "panels" as we know them today. One division of three judges, Division 1, sat in Phoenix and one division of three judges, Division 2, sat in Tucson. The two divisions were designated "a single court." 1964 Ariz. Sess. Laws, ch. 102, § 1 (2nd Reg. Sess.). The complete text of the original statute was as follows:

A. There is created a court of appeals which shall constitute a single court and such court shall be a court of record.

B. The court of appeals shall be divided into the two divisions which shall be designated as division 1 and division 2. Each division shall have three judges.

C. Division 1 shall consist of the counties of Maricopa, Yuma, Mohave, Coconino, Yavapai, Navajo and Apache.

D. Division 2 shall consist of the counties of Pima, Pinal, Cochise, Santa Cruz, Greenlee, Graham and Gila.

E. The sessions of division 1 and 2 shall be held in Phoenix and Tucson respectively. Sessions may be held at places other than Phoenix or Tucson when in the opin-

---

1. The term "panel" is used to refer to a three-judge department of the Arizona Court of Appeals. We use the terms "panel" and "department" interchangeably.

2. For a very readable history of the Arizona Court of Appeals see Hon. Patrick Irvine, *1965–2005: The Arizona Court of Appeals*, Ariz. Atty., June 12, 2005.

ion of a majority of the judges of a division the public interest so requires. The judges of the respective divisions may hold sessions in either division and shall do so when directed by the chief justice of the supreme court.

*Id.*

¶ 7 Arizona's population has grown dramatically since 1965. Accordingly, the court's organizational structure has been modified by statute to accommodate the addition of new judges necessary to meet the increased caseload driven by the rise in population. This has resulted in significant changes, in both nomenclature and structure, in the way the court operates from its inception until today. Initially, when there were only three judges in each division, the court issued decisions by *division. Id.* It was then completely accurate to say Division 1 decided thus and such because a three-judge division—the entirety of Division 1—in fact made the decision.

 ¶ 8 Today, there are sixteen judges in Division 1 and six in Division 2. A.R.S. § 12–120 (2003). As the court grew, the legislature established *departments* consisting of three judges each to issue decisions of the court. *Compare id. with* 1969 Ariz. Sess. Laws, ch. 48, § 1 (1st Reg. Sess.); 1973 Ariz. Sess. Laws, ch. 147, § 3 (1st Reg. Sess.);

1981 Ariz. Sess. Laws, ch. 185, § 1 (1st Reg. Sess.); 1984 Ariz. Sess. Laws, ch. 198, § 1 (2nd Reg. Sess.); 1988 Ariz. Sess. Laws, ch. 38, § 1 (2nd Reg. Sess.); 1994 Ariz. Sess. Laws, ch. 245, § 1 (2nd Reg. Sess.). Pursuant to § 12–120(B), seven departments of three judges issue decisions: five in Division 1 and two in Division 2.[3] As our current statute makes clear, "divisions" no longer make decisions:

> F. *No more than three judges* of the court of appeals, including superior court judges and retired judges sitting with the court, *shall hear and determine a matter and render a decision,* and a majority of two of the three judges shall be sufficient to render a decision.

A.R.S. § 12–120(F) (emphasis added). Section 12–120.07, a related statute governing the publication of court of appeals decisions, reinforces this change. Section 12–120.07 states that "[e]ach of the *departments* shall have the power to hear and determine causes and all questions arising therein." *Id.* § 12–120.07(A) (emphasis added). Thus, "divisions" no longer decide cases. It would be wrong to now say, for example, "Division 1 held" or "Division 2 ruled." Our court has no statutory authority to sit en banc (for example, 16 judges sitting together in Division 1 or six judges sitting together in Division 2) or in any other "divisional" capacity.[4]

---

3. B. The court of appeals shall be divided into two divisions which shall be designated as division 1 and division 2. Division 1 shall have sixteen judges, consisting of the chief judge and five departments of three judges each, denominated, respectively, department A, department B, department C, department D and department E. Division 2 shall have six judges, consisting of two departments of three judges each, denominated, respectively, department A and department B.
A.R.S. § 12–120(B).

4. The current version of A.R.S. § 12–120 states:
A. There is created a court of appeals which shall constitute a single court and such court shall be a court of record.
B. The court of appeals shall be divided into two divisions which shall be designated as division 1 and division 2. Division 1 shall have sixteen judges, consisting of the chief judge and five departments of three judges each, denominated, respectively, department A, department B, department C, department D and department E. Division 2 shall have six judges, consisting of two departments of three

judges each, denominated, respectively, department A and department B.
C. Division 1 shall consist of the counties of Maricopa, Yuma, La Paz, Mohave, Coconino, Yavapai, Navajo and Apache.
D. Division 2 shall consist of the counties of Pima, Pinal, Cochise, Santa Cruz, Greenlee, Graham and Gila.
E. The sessions of divisions 1 and 2 shall be held in Phoenix and Tucson, respectively. Sessions may be held at places other than Phoenix or Tucson when in the opinion of a majority of the judges of a division or department the public interest so requires. The judges of the respective divisions and departments may hold sessions in either division and shall do so when directed by the chief justice of the supreme court. Each judge of the court of appeals may participate in matters pending before a different division or department.
F. No more than three judges of the court of appeals, including superior court judges and retired judges sitting with the court, shall hear and determine a matter and render a decision, and a majority of two of the three judges shall be sufficient to render a decision.

In terms of making decisions, we only operate in three-judge panels or departments of "a single court," regardless of the division in which the department is located. Divisions do not "hold," "rule," or "decide."

¶ 9 An unfortunate carryover from the evolution of § 12–120 is that language in some of our opinions does not correspond to the operation of our court. For example, in *National Indemnity Co. v. St. Paul Insurance Cos.*, 150 Ariz. 492, 724 P.2d 578 (App.1985), we stated that, "[w]hile it is true that one *division* of the Court of Appeals is not bound by a decision of the *other division*, only the most cogent of reasons will justify a divergence between the two." *Id.* at 493, 724 P.2d at 579 (emphasis added). This terminology is confusing because a division has not issued a decision since 1984. Departments alone have issued decisions in Division 1 since 1969, and in Division 2 beginning in 1985. *See* 1969 Ariz. Sess. Laws, ch. 48, § 1 (2nd Reg. Sess.); 1984 Ariz. Sess. Laws, ch. 198, § 1 (2nd Reg. Sess.).

¶ 10 Outdated statutory language is another reminder of how the court of appeals previously operated. Section 12–120.07 currently states:

> The opinions of *a division* or of a department of the court of appeals shall be in writing, the grounds stated, and shall be concurred in by a majority of a department if heard by a department or of the division if heard by the division. *An opinion of a division* or a department of a division shall be the opinion of the court of appeals.

A.R.S. § 12–120.07(A) (emphasis added). The references to a "division" making a decision are now moot, as set forth above. Thus, while this court no longer decides cases by division, vestiges of that earlier decision-making structure still remain.

¶ 11 The departmental, and previous divisional, structure of our court inevitably can and does lead to conflicting decisions. *Compare Raney*, 206 Ariz. at 199–200, 76 P.3d at 873–74 (finding that a preparatory drug offense qualifies as a conviction prohibiting probation under Proposition 200), *with Ossana*, 199 Ariz. at 461–62, 18 P.3d at 1260–61

(finding that a preparatory drug offense does not qualify as a conviction prohibiting probation under Proposition 200); *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 247, 249, 782 P.2d 723, 725 (App.1989) (finding that the absence of an insurance provision expressly excluding punitive damages does not render insurer liable for punitive damages), *with State Farm Fire & Cas. Co. v. Wise*, 150 Ariz. 16, 17, 721 P.2d 674, 675 (App.1986) (finding that the absence of an insurance provision expressly excluding punitive damages makes insurer liable for punitive damages); *Martinez v. Cardwell*, 25 Ariz.App. 253, 256–57, 542 P.2d 1133, 1136–37 (1975) (finding that only a qualified privilege protects executive officials in the course of their duties from liability for defamation), *with Long v. Mertz*, 2 Ariz.App. 215, 222, 407 P.2d 404, 411 (1965) (holding that an absolute privilege protects public officials in the course of their duties from liability for defamation). Under the prior statute, when conflicting decisions were issued, the conflicts were between the two divisions of the court. Now, because decisions are issued by departments of the court, a decision issued by any particular panel may conflict with one issued by another panel within the same division or with one issued by a panel in the other division. Regardless, however, throughout it all we continue to be "a single court." A.R.S. § 12–120(A).

¶ 12 To conclude, the organizational structure of our court has changed. Until 1969 (Division 1) and 1984 (Division 2), divisions made decisions. In terms of decision-making, we now function solely by departments of three judges within each division.

### III.

¶ 13 Against this backdrop, we now turn to the assertion that there is a geographic rule requiring trial courts located in one division to apply the law from a department located within that division when there is a conflict in the cases. The issue of conflicting departmental decisions was touched upon in *Senor T's Restaurant v. Industrial Commission of Arizona (Senor T's I)*, 131 Ariz. 389, 641 P.2d

*Id.* § 12–120.

877 (App.1981). Judge Froeb, in a special concurring opinion, suggested that when decisions of this court conflict, a trial court must follow the decision from the division within which it is located. *Id.* at 393–94, 641 P.2d at 881–82 (Froeb, J., concurring). We quote at length to give context to Judge Froeb's view. Judge Froeb stated:

There is authority from other states that a lower court, when confronted with conflicting appellate decisions in the jurisdiction in which it sits, must follow the later case. Where this rule is followed, the earlier case is overruled whether or not the later case so states. . . .

Although there is no difficulty in applying this rule to conflicting decisions of departments of Division One of the court of appeals, a special problem is presented by conflicting decisions between Division One and Division Two of the court of appeals. I would not apply the same rule in this instance as I believe the organization of the court dictates otherwise. All departments of Division One hear appeals from superior courts in the same jurisdictional area consisting of seven of fourteen counties. Division Two hears appeals from the other seven counties. Although A.R.S. § 12–120(A) states that the court of appeals is a "single court," the same statute also creates this jurisdictional distinction. *Because of this distinction, I would hold that given conflicting decisions between Division One and Division Two, the superior court must follow the decision of the division in which it is located.* In my opinion, the reasons for this outweigh the argument that the court is a single court and a later conflicting decision of one division overrules an earlier decision of the other division. The fact of separate county constituencies points to a hierarchic relationship between a division of the court of appeals and the superior courts sitting within a particular division. The physical separation of Division One and Division Two makes it impossible for collegial discussion to occur, so necessary for an appellate court. This is in contrast to the continuous exchange of colloquy over legal issues which occurs between the judges of Division One who sit at one physical location. By this means the process of precedent-making and precedent-keeping within Division One is vitalized. This process is not possible and therefore does not occur between Division One judges and Division Two judges.[5] Finally, predictability in the decisional process is greatly enhanced when it is known to the superior court that the decision of the division in which it is located will provide the controlling precedent.

*Id.* (Froeb, J., concurring) (emphasis added) (citations omitted).

¶ 14 On appeal, the Arizona Supreme Court commented on the issue but expressly declined to rule on it. *Senor T's Rest. v. Indus. Comm'n (Senor T's II),* 131 Ariz. 360, 365 n. 2, 641 P.2d 848, 853 n. 2 (1982). It stated:

An issue raised by the concurring judges in the Court of Appeals opinion was whether one department of the Court of Appeals may overrule another. *We decline to expressly rule* on this question as it was not raised by the parties and is not essential to our determination. *We are in general agreement, however, with the opinions expressed in Judge Froeb's special concurrence.*

*Id.* (emphasis added). Despite its expression of "general agreement" there is no indication in the supreme court's decision in *Senor T's II* or in its subsequent decisions that when departments in the two divisions of this court have issued conflicting decisions, a trial court must follow the decision of the department in the division in which the trial court is located.

¶ 15 First, *Senor T's II* involved conflicting department decisions *within* Division 1. *Id.* at 362, 641 P.2d at 850. It did not present the issue of a geographical distinction between a decision from the then three-judge Division 2 conflicting with a decision from a department within Division 1. *Id.* Given the facts, the supreme court's "general agree-

---

5. The availability of email and other technology makes it possible for judges from Divisions 1 and 2 to engage in collegial discussion. The prevalence of such electronic communication in the decades following *Senor T's I* undermines this rationale for a geographical distinction.

ment" could have pertained to the sentiment that when department decisions conflict, the most recent department decision may well be the better expression of the law. *See Senor T's I*, 131 Ariz. at 393, 641 P.2d at 882 (Froeb, J., specially concurring). Again, and as the supreme court directly stated, its comments were dicta: "we decline to expressly rule on this question." *Senor T's II*, 131 Ariz. at 365 n. 2, 641 P.2d at 853 n. 2.

¶ 16 Second, subsequent supreme court and court of appeals decisions provide no support for a purported geographical rule binding a trial court to a decision issued by a department within the division in which it is located. One year after *Senor T's II*, the Arizona Supreme Court held: "A decision by the Arizona Court of Appeals has statewide application. Arizona Revised Statutes § 12–120 provides that the Court of Appeals shall constitute *a single court* with two divisions." *Scappaticci v. Sw. Sav. & Loan Ass'n*, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983) (emphasis added). Rather than endorse any geographical rule alleged in this case, the supreme court followed a rule that applies court of appeals decisions to *all* trial courts in the state, regardless of the division in which the trial court is located.

¶ 17 The supreme court reasserted this point in *Schroeder v. Schroeder*, 161 Ariz. 316, 778 P.2d 1212 (1989), when resolving conflicting decisions between departments in Divisions 1 and 2. *See id.* at 324, 778 P.2d at 1220. Upon resolving the conflicting authorities at issue in *Schroeder*, the Arizona Supreme Court made the ruling retroactive upon the trial courts located in both Division 1 and Division 2 because "[o]ne rule [wa]s needed for the entire state." 161 Ariz. at 324, 778 P.2d at 1220. The court applied its holding to both divisions, even though one of the decisions it followed from this court recommended that the rule be applied retroactively only to the division (in this case Division 2) that previously followed the rule the supreme court ultimately adopted. *Id.; see also Snow v. Snow*, 155 Ariz. 138, 143–44, 745

P.2d 196, 201–02 (App.1987) (Fidel, J., dissenting).[6] The ruling suggests the supreme court implicitly rejected the geographical rule supported by Judge Froeb and Judge Fidel in favor of a rule that applies the same legal principle to all trial courts regardless of the division within which they are located.

¶ 18 Had the supreme court supported a geographical rule in *Schroeder*, it could have plainly endorsed such a rule, as have courts in other jurisdictions. For example, one department of the Appellate Division of New York stated that "[t]he Appellate Division is a single statewide court divided into departments for administrative convenience, and, therefore, the doctrine of stare decisis requires trial courts in this department to follow precedents set by the Appellate Division of another department until the Court of Appeals or this court pronounces a contrary rule." *Mountain View Coach Lines, Inc. v. Storms*, 102 A.D.2d 663, 664, 476 N.Y.S.2d 918, 919–20 (N.Y.App.Div.1984) (citations omitted); *see also Heymach v. Cardiac Pacemakers, Inc.*, 183 Misc.2d 584, 588, 698 N.Y.S.2d 837, 840 (Sup.Ct.1999) ("The rule in New York is that a trial court must follow an Appellate Division precedent in its own Department, and, in the absence of a relevant decision in its own Department, a trial court is bound to follow applicable decisions in another Department of the Appellate Division, until its own Appellate Division decides otherwise."). The Arizona Supreme Court has resolved many conflicting court of appeals decisions since *Senor T's II*, but nowhere has the court adopted, or referred to, the geographical rule asserted here. *E.g., State v. Stummer*, 219 Ariz. 137, 194 P.3d 1043 (2008); *Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 117 P.3d 786 (2005); *State v. Estrada*, 201 Ariz. 247, 34 P.3d 356 (2001); *Hall v. Lalli*, 194 Ariz. 54, 977 P.2d 776 (1999); *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217 (1992); *Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 800 P.2d 962 (1990); *State v. Thurlow*, 148 Ariz. 16, 712 P.2d 929 (1986).

---

**6.** In *Snow*, Judge Fidel, concerned about the "harmful implications of the unresolved conflict between Divisions One and Two," expressed agreement with Judge Froeb's geographical rule in *Senor T's I. Id.* at 144, 745 P.2d at 202 (Fidel,

J., dissenting). Judge Fidel urged "members of the superior court [to] adopt the view Judge Froeb expressed in *Senor T's*, even though there is as yet only dictum on the subject." *Id.* (Fidel, J., dissenting).

¶ 19 The Arizona Supreme Court has recognized that our court "consider[s] decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles, or conditions have changed so as to render these prior decisions inapplicable." *Scappaticci*, 135 Ariz. at 461, 662 P.2d at 136 (quoting *Castillo v. Indus. Comm'n*, 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974)). Departments of our court adhere to this principle. *E.g., White v. Greater Ariz. Bicycling Ass'n*, 216 Ariz. 133, 137–38, ¶ 14, 163 P.3d 1083, 1087–88 (App. 2007); *In re Estate of Gordon*, 207 Ariz. 401, 405, ¶ 18, 87 P.3d 89, 93 (App.2004) (expressing the principle that "[w]hen we disagree with a prior decision of our Court ... we should do so only upon the most cogent of reasons being presented") (quoting *Neil B. McGinnis Equip. Co.*, 2 Ariz.App. 59, 62, 406 P.2d 409, 412 (1965)); *Wilson*, 162 Ariz. at 250, 782 P.2d at 726; *State v. Dungan*, 149 Ariz. 357, 361, 718 P.2d 1010, 1014 (App. 1985).

■ ¶ 20 The superior court is bound by our decisions, regardless of the division out of which they arise. *See Francis v. Ariz. Dep't of Transp.*, 192 Ariz. 269, 271, 963 P.2d 1092, 1094 (App.1998). Because the superior court is one court, there is no legal distinction between courts located in Division 1 and Division 2 except as specified by statute.[7] *See Marks*, 186 Ariz. at 142, 920 P.2d at 22. When confronted with conflicting decisions by different departments of our court, a trial court must use its discretion to adopt the decision that most persuasively interprets the law, regardless of the division to which

the department making the decision belongs or within which the trial court sits. This is the standard trial courts already use when evaluating legal authority from other states to decide an issue with no Arizona law on point. *See Kotterman v. Killian*, 193 Ariz. 273, 291, 972 P.2d 606, 624 (1999) (stating that a court "must decide how persuasive the legal opinions of other jurisdictions will be to [its] holdings"); *Gaethje v. Gaethje*, 7 Ariz. App. 544, 546–47, 441 P.2d 579, 581–82 (1968) (recognizing that the trial court relied on Washington case law over California and Texas case law). Similarly, the geographical location of the trial court is of no consequence in determining which of two conflicting decisions between departments of this court the superior court must follow.

## IV.

■ ¶ 21 As set forth above, there is no geographical rule requiring trial courts located in one division of this court to follow a decision from a department within that division when a more persuasive opinion from a department in the other division exists. The trial judge here implicitly recognized this. After reviewing the merits of *Ossana* and *Raney*, the trial judge determined *Ossana* is "not well-founded" and that "the greater weight of the case law" supports *Raney*. This is precisely the type of analysis in which the trial court should engage when conflicting decisions from this court exist and the Arizona Supreme Court has not spoken. The division from which the decision comes is of no consequence. No such rule exists. Thus, there was no error on the basis asserted.[8]

7. Section 12–121 provides that "[i]n each county of the state there shall be a superior court for which at least one judge shall be elected." A.R.S. § 12–121(A) (2003). Location of superior courts and judges in each county is for administrative convenience because, "[a]lthough superior court judges primarily serve in their home county, they are qualified and eligible to serve in any division of the court." *Lerette v. Adams*, 186 Ariz. 628, 629, 925 P.2d 1079, 1080 (App.1996). The Arizona Constitution creates superior courts in each county of the state that together "constitute a single court." Ariz. Const. art. 6, § 13. Although each superior court can have departments and divisions to manage cases, "the superior court is not a system of jurisdictionally segregated departments but rather a 'single unified trial court of general jurisdiction.'" *State v. Marks*, 186 Ariz. 139, 142, 920 P.2d 19, 22 (App. 1996) (quoting *Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 102, 907 P.2d 67, 71 (1995)); *see also Peterson v. Speakman*, 49 Ariz. 342, 348, 66 P.2d 1023, 1025 (1937) ("Its separation into divisions is purely imaginary and for convenience only. The jurisdiction of the court, no matter by which judge it is exercised, is that of the whole court, and not of one judge nor division thereof.").

8. Appellant did not contend that the trial court erred because *Ossana* was better reasoned than *Raney* and the court should have followed *Ossa-*

## V.

¶ 22 For the reasons stated above, we affirm Patterson's conviction and sentence.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and MAURICE PORTLEY, Judge.

*na* on that basis. Rather, the only issue presented to us was the asserted constitutional error in following a rule that allegedly deprived defendants in one portion of the state of benefits enjoyed in another. Thus, we need not (and consequently do not) address the differing resolutions of the substantive issue *Ossana* and *Raney* present.