IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

JOSE ANGEL SOTO III,
*Appellant*.

No. 2 CA-CR 2024-0145
Filed March 4, 2026

---

Appeal from the Superior Court in Pima County
No. CR20221282001
The Honorable Richard E. Gordon, Judge

**REVERSED IN PART AND REMANDED**

---

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Casey D. Ball, Assistant Attorney General, Phoenix
*Counsel for Appellee*

James Fullin, Pima County Legal Defender
By Jeffrey Kautenburger, Assistant Legal Defender, Tucson
*Counsel for Appellant*

## OPINION

Chief Judge Staring authored the opinion of the Court, in which Vice Chief Judge Eppich concurred and Judge Eckerstrom specially concurred.

S T A R I N G, Chief Judge:

**¶1**         Jose Angel Soto III appeals from his convictions and sentences of three counts of child molestation of R.L., two counts of sexual abuse of a minor of R.L., and one count of child molestation against A.L.  He argues the trial court erred in its interpretation of A.R.S. § 13-705(M)[1] at sentencing and there was insufficient evidence to find him guilty on one count of child molestation against R.L.  We reverse as to that count and remand for resentencing.

### Factual and Procedural Background

**¶2**         We view the evidence in the light most favorable to sustaining the jury's verdicts.  *State v. Felix*, 237 Ariz. 280, ¶ 30 (App. 2015).  In May 2021, R.L. and A.L. lived with their family but without their father, Soto.  At that time, R.L. was eleven years old and A.L. was eight years old.  After moving in with the family, Soto rubbed his genitals on R.L. and touched R.L.'s genitals and breasts.  He also rubbed his genitals on A.L.

**¶3**         Soto was charged with three counts of child molestation and two counts of sexual abuse of R.L. and one count of molesting A.L.—all dangerous crimes against children ("DCAC").  After a three-day trial, the jury found him guilty of all counts.  Believing that § 13-705(M) compelled it, the trial court sentenced Soto to serve each of the counts consecutively, resulting in a total sentence of seventy-eight years imprisonment minus 802 days of time already served.  This appeal followed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

---

[1]Soto committed the offenses in May 2021.  An amended version of the statute took effect in September 2021, after the offenses occurred.  Because the version in effect at the time of the offenses applies, *see State v. Newton*, 200 Ariz. 1, ¶ 3 (2001), all references to § 13-705(M) are to the applicable earlier version.  *See* 2018 Ariz. Sess. Laws, ch. 181, § 1.

## Discussion

### I.  Statutory Interpretation of A.R.S. § 13-705(M)

¶4            Matters of statutory interpretation involve questions of law, which we review de novo.  *See State ex rel. Polk v. Campbell*, 239 Ariz. 405, ¶ 4 (2016).  "We interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, ¶ 11 (2019).  As such, the statute's text controls when it is clear and unambiguous unless it would cause an absurd result or a constitutional violation.  *State v. Serrato*, 259 Ariz. 493, ¶ 9 (2025).  However, if the language of the statute is ambiguous, "we may use alternative methods of statutory construction, including examining the rule's historical background, its spirit and purpose, and the effects and consequences of competing interpretations." *Id.* (quoting *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, ¶ 17 (2024)).

¶5            Section 13-705 sets forth the sentencing ranges for dangerous crimes against children.  Subsection (M) addresses the circumstances under which the trial court retains the authority to impose sentences for some of those crimes concurrently.  *See* § 13-705(M).  It reads as follows:

> The sentence imposed on a person by the court for a dangerous crime against children under subsection D of this section involving child molestation or sexual abuse pursuant to subsection F of this section may be served concurrently with other sentences if the offense involved only one victim.   The sentence imposed on a person for any other dangerous crime against children in the first or second degree shall be consecutive to any other sentence imposed on the person at any time, including child molestation and sexual abuse of the same victim.

*Id.*

¶6            Soto contends that the first sentence of this provision gave the trial court discretion to impose concurrent prison terms as to some or all of the several counts alleging crimes committed against R.L.  He observes that these counts involved only one victim as required by the statute and that

each of the counts involved either "child molestation or child sexual abuse," the other requirement of that provision.

¶7        The state counters that subsection (M) does not provide the trial court with the authority to impose concurrent sentences among sexual abuse or child molestation counts committed against the same victim. Rather, the state interprets the language as allowing child molestation or sexual abuse counts to be imposed concurrently only as to sentences for those crimes which are not dangerous crimes against children. In support of this reading, the state maintains that the second sentence of subsection (M) limits the scope of the first by clarifying that "any other dangerous crime[s] against children in the first or second degree" must run consecutively to any other offense.

¶8        We conclude that Soto's reading of the statute provides a reasonable, straightforward interpretation of the text's plain language. By contrast, embracing the state's reading would require us to assume our legislature chose to express itself indirectly, and obtusely, when more simple language was readily available to convey its meaning.

¶9        The first sentence of subsection (M) provides that prison terms for child molestation and sexual abuse may "be served concurrently with other sentences if the offense involved only one victim." § 13-705(M). By its plain terms, this language equips trial courts with discretion to impose multiple sentences for child molestation and sexual abuse concurrently with any "other sentences." In the absence of any qualification or limitation on that phrase, "other sentences" encompasses those imposed for all types of underlying crimes—including other child molestation or sexual abuse offenses. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 101 (2012) (general words "must be given general effect").

¶10       The pertinent text also demonstrates the legislature's willingness to qualify the scope of that exception for child molestation and sexual abuse offenses. But the language it provided demonstrates it chose to do so in only one respect: the multiple sentences must apply to a single victim. *See* § 13-705(M). As noted, the lone sentence devoted to articulating the scope of a trial court's sentencing discretion for child molestation and sexual abuse offenses contains no language limiting its application when the "other sentences" were imposed for other child molestation or sexual abuse offenses. *See id.*; *Bilke v. State*, 206 Ariz. 462, ¶ 13 (2003) (unless legislature demonstrates intent to limit scope of general words by placing

them with a list of similar things, general words must be given their usual and commonly understood meaning).

¶11          The context of the phrase "other sentences" reinforces our understanding of the subsection's meaning.  The first sentence of subsection (M) is crafted to address the sequencing of prison terms as to multiple counts when at least one of the convictions is for child molestation or sexual abuse.  *See* § 13-705(M).  As a practical matter, the "other sentences" in those cases would predictably include sentences for other counts of those same two crimes.  Under such circumstances, the legislature would not have neglected to expressly exempt other child molestation and sexual abuse crimes from concurrent treatment had it intended to do so.

¶12          The state contends, however, that the second sentence of subsection (M) provides that very exemption and thereby retracts much of what the first sentence seemingly bestows.  In pertinent part, the second sentence directs that any sentence imposed "for any *other* dangerous crime against children . . . shall be consecutive to any other sentence imposed on the person at any time."  § 13-705(M) (emphasis added).  The state asserts that the phrase "any other dangerous crime against children" refers not to other types of dangerous crimes against children—but rather any *additional* DCAC counts beyond a lone count.  Under this construction, the second child molestation or sexual abuse count against a single victim would always constitute "any other" dangerous crime against children and a consecutive sentence would be required.

¶13          In our view, the phrase "any other dangerous crime against children" plainly and directly refers to other types of dangerous crimes against children beyond child molestation or sexual abuse.  So read, the second sentence describes not a limitation on the first—but rather how the remainder of DCAC offenses should be treated in sequencing a defendant's prison term.  *See* § 13-705(Q) (itemizing DCAC offenses).

¶14          Our understanding of the disputed phrase is reinforced by its context in several respects.  First, the two sentences of subsection (M) have a parallel construction; both address the prison term a court may impose under the circumstances that follow.  In that context, the second sentence's phrase "any other dangerous crimes against children" refers to any DCAC offenses "other" than those mentioned in the first sentence:  DCAC offenses other than child molestation and sexual abuse.  Notably, the state's interpretation of that language—that it refers to any second or subsequent DCAC offense—finds no similar footing in the prior sentence.

5

**¶15**       Further, the legislature has instructed us that it strives to provide clarity as to "the sentences authorized upon conviction." A.R.S. § 13-101(2) (purpose of criminal statute to provide "fair warning" of punishment for offenses); *see also* Scalia & Garner, *supra*, at 56 (interpretation that furthers a statute's purpose preferred over one that does not). Once the legislature drafted the first sentence of subsection (M), that purpose would have compelled it to erase any ambiguity when drafting its second sentence. We therefore assume that, had the legislature intended its second sentence to shift gears from the first, and refer to "any second or subsequent dangerous crime against children," rather than the remainder of the DCAC offenses, it would have used more precise language—perhaps that very language—to clarify that intention.

**¶16**       Applying our interpretation, subsection (M) comprehensively explains the trial court's discretion in sequencing prison terms for every species of dangerous crimes against children. The first sentence addresses the court's discretion in sequencing prison terms as to child molestation and sexual abuse counts involving a single victim. Its second sentence addresses the required sequence for all other dangerous crimes against children, including those involving a single victim.

**¶17**       We recognize that another panel of this court has reached a different conclusion concerning the meaning of § 13-705(M). *See State v. Brock*, 248 Ariz. 583, ¶ 29 (App. 2020). In a divided opinion, the majority in that case read the language of subsection (M) as the state urges here. The dissent interpreted that provision consistent with our reasoning. *Id.* ¶¶ 46-63 (Johnsen, J., dissenting). Here, for the reasons set forth above, and because our conclusion is anchored in the plain language of subsection (M), we respectfully disagree with the *Brock* majority; and we agree with the dissenting judge's analysis. *See id.*; *State v. Patterson*, 222 Ariz. 574, ¶ 19 (App. 2009) (prior decision of coordinate court not binding if based on principles second panel concludes are clearly erroneous). In the absence of any additional statutory language to guide us, we have no basis to discard the plain meaning of the text before us based on speculation as to which balance of severity and proportionality the legislature intended to strike.[2]

---

[2]Further, as stated in the *Brock* dissent, viewing the legislative history of the statute is also not helpful, as it is "inconclusive regarding the purpose of the 1997 amendment." 248 Ariz. 583, n.9 (quoting *State v. Tsinnijinnie*, 206 Ariz. 477, n.4 (App. 2003)). The relevant legislative fact sheet states that the amendment "[c]larifies sentencing language involving sexual child

¶18  The *Brock* majority anchored its reasoning in part on the purpose of the statute. Specifically, it contends that our reading of subsection (M), as articulated in the *Brock* dissent, is "at war with the purpose of dangerous crimes against children statutes," which is to "severely [punish] those persons who commit such crimes." 248 Ariz. 583, ¶ 35. But our legislature also instructs that our state's criminal sentencing statutes are crafted "[t]o differentiate on reasonable grounds" between more serious and less serious offenses with the intention "to prescribe proportionate penalties for each." § 13-101(4). These concurrent purposes—severe punishment and proportionality—would both be served by our interpretation of the statute. And our resolution does not permit Soto to escape serious punishment. *See* 2018 Ariz. Sess. Laws, ch. 181, § 1 (providing minimum sentences for child molestation and sexual abuse respectively, requiring Soto to serve at least twenty years in prison with no eligibility for earlier release). Neither does it deprive the trial court of discretion to impose consecutive sentences; the court could still sentence Soto to an aggregate of seventy-eight years in prison.

¶19  The *Brock* majority additionally asserts that its "reading of the statute is consistent with earlier decisions from" Arizona courts. *Brock*, 248 Ariz. 583, ¶ 30 (discussing *State v. Tsinnijinnie*, 206 Ariz. 477, ¶¶ 6, 14 (App. 2003), and *State v. Jones*, 235 Ariz. 501, n.1 (2014)). However, we find neither case controlling because, as pointed out in the *Brock* dissent, "neither case addresses the question presented here." 248 Ariz. 583, ¶ 60 (Johnsen, J., dissenting). Indeed, in *Tsinnijinnie*, we considered whether a nearly identical predecessor to § 13-705(M) gave the trial court discretion to order the defendant's sentences for sexual assault and child molestation to be served concurrently. 206 Ariz. 477, ¶ 6. But, unlike the offenses in *Tsinnijinnie*, all of the offenses for which Soto was sentenced are covered by the first sentence of § 13-705(M)—that is, they "involv[ed] child molestation or sexual abuse." And in *Jones*, our supreme court considered the discrete issue of whether the consecutive-sentence requirement for specified DCAC offenses in § 13-705(M) governed over the concurrent-sentence requirement for multiple convictions resulting from a single act or omission in A.R.S. § 13-116. *See* 235 Ariz. 501, ¶¶ 5, 7.

---

molestation and sexual abuse of the same victim," but does not provide any further information as to the intent of the legislature. S. Fact Sheet for H.B. 2016, 43d Leg., 1st Reg. Sess. (Ariz. Mar. 24, 1997).

¶20 Moreover, to the extent these cases are instructive, the *Brock* majority's interpretation of § 13-705(M) directly conflicts with the interpretation of the predecessor statute in *Tsinnijinnie* that was subsequently cited in *Jones*. In support of its assertion that a "second conviction for child molestation is . . . an 'other dangerous crime against children' that requires an imposition of a consecutive sentence," *Brock*, 248 Ariz. 583, ¶ 33 (quoting § 13-705(M)), the *Brock* majority quoted the following language from *Tsinnijinnie*:

> [w]hen the two sentences of subsection (K) are considered together, the sentencing discretion granted to the trial court by the first sentence is limited by the second sentence. If a defendant is convicted of child molestation or sexual abuse along with another offense that is not a dangerous crime against children, the trial court has discretion to order that the sentences be served concurrently if only one victim is involved. If, however, a defendant is convicted of any "other" dangerous crime against children, the sentence for each such offense must be served consecutively to any other sentence imposed.

*Id.* ¶ 30 (quoting *Tsinnijinnie*, 206 Ariz. 477, ¶ 14).

¶21 Curiously, however, the *Brock* majority neglected to quote any material from the prior paragraph in which the *Tsinnijinnie* court stated that the "use of the word 'other' means that the second sentence will apply to all sentences for dangerous crimes against children *except child molestation* under subsection D and *sexual abuse* under subsection E." *Tsinnijinnie*, 206 Ariz. 477, ¶ 13. Thus, read in context, the phrase "'other' dangerous crime against children" in the last sentence of *Tsinnijinnie*'s paragraph fourteen does not refer to any additional DCAC offense, as suggested by the *Brock* majority, but to any DCAC offense besides child molestation or sexual abuse—consistent with what we have determined here. *See Brock*, 248 Ariz. 583, ¶ 33.

¶22 Notably, the *Brock* majority maintains that the last clause of § 13-705(M) "specifically includes other child molestation and sexual abuse offenses against the same victim" among those offenses that must be run consecutively to any other punishment imposed. 248 Ariz. 583, ¶ 40. But, understood in the context of the first sentence of § 13-705(M), and the first

clause of its second sentence, the last clause addresses only the sequencing of punishments for DCAC offenses *other than child molestation and sexual abuse*. That clause clarifies that, while child molestation and sexual abuse offenses may be sequenced concurrently with each other if one victim is involved (the plain meaning of the first sentence), they must still be run consecutively to the remainder of DCAC offenses (those expressly addressed by the second sentence). *See* § 13-705(M); *Brock*, 248 Ariz. 583, ¶¶ 51-52 (Johnsen, J., dissenting).

¶23 Indeed, *Brock*'s suggested reading of the statute's last clause would nullify the plain meaning of the first sentence altogether—unless one understands the first sentence as providing that child molestation and sexual abuse offenses may be run concurrently only with non-DCAC offenses and only when a defendant has been convicted of only one count of child molestation or sexual abuse.[3] *See* 248 Ariz. 583, ¶ 40. But the first sentence of § 13-705(M) contains no language conveying such caveats. To the contrary, as noted, its text expressly applies the concurrent sequencing exception broadly to "other sentences." § 13-705(M). Thus, the language chosen by the legislature for the last clause only serves to reinforce our understanding of the statute.

¶24 While this opinion was being prepared, our supreme court issued *State v. Marner*, No. CR-24-0300-PR, 2026 WL 249230 (Ariz. Jan. 30, 2026). We have considered *Marner* and conclude that it does not alter our analysis. There, our supreme court addressed whether DCAC sentencing enhancements applied to a conviction for luring a minor for sexual exploitation when the "minor" victim was fictitious rather than an actual child. *Id.* ¶ 1. It held that DCAC sentencing enhancements applied in this context, relying in part on the "regulatory scheme governing the consequences for the luring of minors." *Id.* ¶ 44. The court emphasized that, read together, A.R.S. §§ 13-705(S) (part of the DCAC) and 13-3554(B) (the criminal luring statute) each "independently establish that the luring of a fictitious minor is not a defense," revealing a clear legislative objective to "eliminate the fictitious minor defense." *Id.* ¶¶ 37, 44. Here, by contrast, the statutes governing sexual abuse and child molestation lack provisions establishing whether sentences imposed for such offenses are to run concurrently or consecutively. *See* A.R.S. §§ 13-1404 (sexual abuse), 13-1410

---

[3]The construction of such an acutely narrow exception seems like an unlikely way to begin the lone DCAC subsection that addresses the sequencing of DCAC punishment.

(child molestation). Thus, unlike in *Marner*, the relevant regulatory scheme does not reveal a comparable objective that would justify the state's reading.

**¶25**        Further, unlike *Marner*, there is no question that Soto is subject to DCAC sentencing. *See Marner*, 2026 WL 249230, ¶¶ 29-31. Neither do we read *Marner* as establishing a rule that the DCAC always requires interpretation that leads to the most severe punishment, even at the expense of plain language principles.[4] Finally, we note that the legislature's 2021 amendment to § 13-705(M), which removed the subsection's reference to child molestation, aligns with our interpretation. *See* 2021 Ariz. Sess. Laws, ch. 202, § 1; *see also Marner*, 2026 WL 249230, ¶ 39 (noting that non-applicable 2025 amendment to § 13-705(T)(1) "reinforce[d]" proposition that "DCAC enhancements apply even when the minor is fictitious"). Indeed, the relevant senate fact sheet explained that the amendment required "specified sentences for child molestation to be served consecutively rather than concurrently," indicating that, prior to the amendment, multiple sentences for child molestation involving one victim could be served concurrently—consistent with our conclusion here. S. Fact Sheet for H.B. 2889, 55th Leg., 1st Reg. Sess. (Ariz. Mar. 16, 2021).

**¶26**        Therefore, we conclude that the trial court possessed the discretion under subsection (M) to impose sentences for the three counts of child molestation and two counts of sexual abuse committed against R.L. either concurrently or consecutively with each other.[5] Because the court did not believe it possessed such discretion at the time of the original sentencing, we remand for resentencing.[6]

## II. Insufficiency of the Evidence as to Count Five

**¶27**        Next, Soto contends the trial court erred in convicting him on count five. Count five alleged that he committed molestation of a child by intentionally or knowingly engaging in sexual contact with R.L. by rubbing his genitals against her. Although R.L. testified that such conduct had

---

[4]Unlike our concurring colleague, we find it unnecessary to discuss the rule of lenity in this plain language case.

[5]As discussed below, we accept the state's concession in dismissing a fifth count of child molestation.

[6]Our disposition should not be construed as indicating any opinion concerning the outcome of the resentencing.

occurred on a different occasion, she did not testify that it occurred during the incident underlying this count. Rather, she avowed only that when she awoke, her basketball shorts, but not her underwear, had been removed.

**¶28**        We review de novo whether the evidence presented at trial was sufficient to support the jury's verdict. *State v. Pena*, 235 Ariz. 277, ¶ 5 (2014). Evidence is sufficient if "reasonable persons could accept [it] as sufficient to support a guilty verdict beyond a reasonable doubt." *Id.* (quoting *State v. Hausner*, 230 Ariz. 60, ¶ 50 (2012)).

**¶29**        The state properly concedes that the evidence was insufficient to support a conviction on count five. The sole evidence advanced was the absence of R.L.'s basketball shorts. Although such evidence would have entitled the jury to infer that Soto removed them, it does not establish beyond a reasonable doubt that Soto engaged in the specific sexual contact alleged in the indictment. On this record, no reasonable person could find the state had proven that element. *See id.*

**¶30**        We therefore accept the state's concession. Because the evidence was inadequate to sustain a finding that Soto rubbed his genitalia on R.L. as alleged in count five, we reverse Soto's conviction on that count.

**Disposition**

**¶31**        We reverse count five and remand the case for resentencing consistent with this decision.

E C K E R S T R O M, Judge, specially concurring:

**¶32**        I concur in every respect with my colleagues' interpretation of the operative language in § 13-705(M), now amended as § 13-705(P). The majority articulates the most straightforward understanding of the plain language of the statute. It also offers the only reading that honors the broader contextual purpose of the subsection: to lucidly prescribe sentence sequencing requirements for the full array of dangerous crimes against children.

**¶33**        Here, however, we do not write on a clean slate. Rather, we address and resolve a question of statutory interpretation using comprehensive reasoning that is squarely at odds with the equally comprehensive reasoning of another panel of this court. *See Brock*, 248 Ariz. 583, ¶¶ 27-44. When addressing criminal statutes under that circumstance,

we should consider how authentic textual ambiguity might affect a statute's application.[7]

¶34 In so doing, we must be mindful that any potential defendant has a statutorily recognized due process interest in fair notice of the punishment prescribed for any type of criminal conduct. *See* § 13-101(2) (purpose of Arizona criminal code is "[t]o give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction"); *see also Vo v. Superior Court*, 172 Ariz. 195, 200 (App. 1992) (observing that fair warning as to the nature of criminal acts is an essential element of due process). Accordingly, our supreme court has instructed that, when the meaning of a criminal statute is subject to more than one reasonable interpretation, after "all the legitimate tools of interpretation have been applied," we resolve any ambiguity in favor of the defendant. *State v. Tarango*, 185 Ariz. 208, 210 (1996) (rule of lenity applicable when criminal sentencing statute susceptible to more than one interpretation); *Serrato*, 259 Ariz. 493, ¶ 33 (rule of lenity pertinent if ambiguity persists after all interpretative tools applied); *see also State v. Sanchez*, 209 Ariz. 66, ¶ 6 (App. 2004); *Reinesto v. Superior Court*, 182 Ariz. 190, 192 (App. 1995).

¶35 In my view, the rationale energizing the rule of lenity provides an additional compelling reason to reject the state's understanding of the statute: we should disfavor an interpretation of a penal statute that effectively conceals a defendant's possible punishment behind a cloud of interpretive obscurity. Scalia & Garner, *supra*, at 299 ("[W]e believe that when the government means to punish, its commands must be reasonably clear."). And when, as here, unbiased appellate judges themselves can find no consensus—after thoroughly applying all the pertinent tools of interpretation at their disposal in competing, comprehensive opinions—how could potential criminal defendants possibly divine which interpretation correctly describes their potential punishment?

¶36 Of course, proper application of the rule requires more than the showing of judicial disagreement as to the meaning of a statute. It must also be anchored in authentic textual ambiguity. Here, the correct meaning of the statute effectively depends on how we understand the phrase "any

---

[7]The due process and notice concerns underlying the rule of lenity necessarily become prominent for future jurists who must choose between the two understandings of § 13-705(M) when either imposing a sentence or resolving an appellate claim surrounding the propriety of a sentence.

other dangerous crime against children" in the second sentence of § 13-705(M). The state contends that this language refers to any second or subsequent dangerous crime against children. *See Brock*, 248 Ariz. 583, ¶ 33. We understand the words "any other" to refer to all the other dangerous crimes against children *apart from* those mentioned in the first sentence. *See Brock*, 248 Ariz. 583, ¶ 48 (Johnsen, J., dissenting) (observing that the phrase "any other" in the second sentence refers to dangerous crimes against children *other than* child molestation and sexual abuse, the predicates mentioned in the first sentence). Read in isolation, the phrase could semantically carry either meaning and, to that extent, would be properly characterized as insolubly ambiguous.

¶37 Our courts, however, do not read statutory phrases in isolation. For the reasons set forth in the majority opinion, we maintain that the context of that phrase can support only one correct understanding of it. But, even if one finds our reasoning as to the broader context of the statute unpersuasive—or if one concludes that the state's competing reasoning is as plausible as our own—our controlling jurisprudence instructs our courts to resolve the resulting ambiguity in favor of the defendant. *See Serrato*, 259 Ariz. 493, ¶ 33; *Tarango*, 185 Ariz. at 210; *Sanchez*, 209 Ariz. 66, ¶ 6; *Reinesto*, 182 Ariz. at 192; *Vo*, 172 Ariz. at 200.

¶38 That jurisprudence conforms to respected scholarly perspectives on the rule of lenity. In their highly regarded treatise on the interpretation of legal texts, Justice Scalia and Bryan Garner chronicle the longstanding origins of the rule, explaining that it "antedates both state and federal constitutions" and is based on the premise that "a just legislature will not decree punishment without making clear what . . . the extent of the punishment will be." Scalia & Garner, *supra*, at 296-97 (rule of lenity "is founded on the tenderness of the law for the rights of individuals" (quoting *United States v. Wiltberger*, 18 U.S. 76, 95 (1820))). In practice, Scalia and Garner endorse application of the rule when "after all the legitimate tools of interpretation have been applied, 'a reasonable doubt persists'" about the meaning of a criminal statute. *Id.* at 299-301. They advocate for the continuing vitality of the rule and opine that it may be "underused in modern judicial decision-making." *Id.*

¶39 Whether overused or underused, I submit that, in this case, the rule of lenity would be the appropriate interpretive tool for any Arizona jurist, tasked with applying former § 13-705(M), that does not share our confidence it is subject to only one reasonable interpretation.